SHEPARD, APPELLANT vs. THE BANK OF THE STATE OF MISSOURI, RESPONDENT.

1. Article XVI of the act regulatig practice in courts of justice, authorizing a reference of issues to referees, does not infringe the right of trial by jury, and is not unconstitutional.

2. The supreme court will not reverse a judgment of the circuit court, unless error has been committed, against the appellant, materially affecting the merits of the action.

Shepard vs. The Bank of the State of Missouri.

3. An account handed or sent to a merchant who keeps it, without any objection being made for long time. is presumed to be correct; and there is no reason why the same doctrine should not apply to other persons, between whom are accounts current or accounts in the ordinary course of business.

## APPEAL from St. Louis Circuit Court.

### STATEMENT OF THE CASE.

The plaintiff filed his petition in the St. Louis circuit court on the 4th of September, 1849, alleging, that he had made deposits of cash at the bank of the State of Missouri, between the first of April, 1842, and the first of August, 1846, to the amount of $37,771 90, with an exhibit of the items; admitting credits for payment to the amount of $35,071 90, and claiming a balance due him, on the first of August, 1846, of $2,700. The answer of the defendant ' denies owing the plaintiff any thing It admits that the plaintiff deposited large sums with the bank between the first of April, 1842, and the 12th of October, 1849, and it does not deny that the sums deposited by the plaintiff amounted, as stated in the petition to the sum of $37,771 90. The answer alleges, by way of defence, that the bank had paid the whole sum deposited, on checks of the plaintiff to the holders thereof; and that the greater part of these checks had been cancelled and delivered up to the plaintiff, according to the usage of the bank; and further, that the plaintiff had overdrawn his account to the amount of $9 72, and that he was still indebted to the bank for that sum. There was a replication, denying this indebtedness.

When the case was about to be called for trial, the defendant's counsel moved the court for an order of reference of the case to a referee, under the provisions of the new code of practice, to take and state an account between the parties. The order was made, and the plaintiff excepted, and filed his bill of exceptions. The plaintiff then filed his motion to set aside the order of reference, which was overruled, and a bill of exceptions filed.

When the case came on for a hearing before the referee, he proceeded, in fact, as if trying the whole issues in the case. The plaintiff read the pleadings by which his demand was admitted; and the defendant then, in support of the defences set up in the answer, called, as a witness, the first individual book-keeper of the bank, during the time of this account; and was proceeding to verify the entries in the plaintiff's account in the books of the bank, with a view of offering the books in evidence, without having first proved, or attempted to prove the existence and loss or destruction of the checks, or to account for them, to which the plaintiff's counsel objected. The objection was overruled and exception taken. The defendant proved with the testimony of the witness, who stated, in substance, that the entries were in his own hand-writing; that they were made in the regular course of business, at the times of their dates; that his practice was to make his entries from checks or notes of the customer, or tickets of the tellers, taken from the teller's files; that they were first entered in the cash-book, and then in the ledger, and the ledger was then verified by comparison with the cash book; that the notes of the customer falling due at the bank were sometime, by his request (when he had money on deposit,) placed in the teller's files as checks, and that tickets of the teller's for balances, or to correct miscalculations or otherwise, were also placed on the file, and in either case, charged in the ledger as checks, and that he could not distinguish such items, except when, in some instances, a ticket was charged in the ledger as a ticket; that he believed he never made entries without having a check, or some such evidence of authority before him, and that when he made these entries in the plaintiff's account, he believed he must have had such evidence before him, though he had no knowledge or remembrance of the checks, or the particular transactions independent of the books. He also

Shepard vs. The Bank of the State of Missouri.

stated, that he had long been acquainted with the hand-writing of the plaintiff, and that the plaintiff had an account at the bank during the time of these entries. It also appeared that the entries in the books of the bank, corresponded with each other and with the account written in the plaintiff's bank book (which was produced at the instance of the defendant,) after it had been handed into the bank to be written up, and with the account exhibited with the answer of the defendant, except a difference of ten dollars in the last balance, which produced a difference in the result, between said account exhibited, and the books of the bank, and the account written into the plaintiff's bank book, of $9 72 in favor of the defendant, instead of 28 cts. in favor of the plaintiff. The form of these entries was as follows: "The Bank of the State of Missouri in acc't with Elihu H. Shepard—13 April, 1842, by chk. $2 83.'

The entries having been verified in this way, the books were offered in evidence, admitted and an exception taken

It appeared from the evidence, that other persons had powers of attorney to draw checks for the plaintiff in his absence; that his account was mostly what is called a discount account; the items consisting chiefly of notes discounted and paid at the bank; and that sometimes, when the note of a customer, falling due at the bank, had been placed on the teller's files and charged as a check, it would be afterwards taken up by a check, and the witness thought he recollected, at least, one or two instances, when this was done with plaintiff. There was also evidence tending to show that in some few instances mistakes were committed at the bank, and other such institutions, by charging checks to the account of the wrong person; that errors sometimes occurred in the books of the bank, and that for some years the books of this bank had not balanced to from one to six thousand dollars, and that large deficiencies had been discovered in the funds of the bank, which the books did not show.

It distinctly appeared from the evidence, that no cancelled checks had ever been delivered up to the plaintiff, as alleged in the answer. There was an entry on the face of ledger No. 7, page 405, at the close of this account, first of August, 1846, in these words: "No checks were returned of this account since the balancing, (1st April, 1846)—misplaced to be cancelled and settled without further entry in Bank Book." There was also a memorandum in the hand-writing of the book-keeper, at the close of the account written into the plaintiff's bank book. when handed back to him after being written up, to the effect that all the checks of this account had been misplaced.

Eighteen checks of the plaintiff, drawn by him, or by his authority, were produced, amounting to $5,930 70. It appeared that it was the custom in the bank to place checks, when paid and entered, in a drawer, from which they were afterwards taken out and assorted, and each customer's checks put by themselves, in pocket books kept for the purpose, until cancelled and delivered up on settlement of the customer's bank book. The clerk, whose business it was to have charge of these checks, stated that he had examined all places in the bank, where checks are usually kept; that search had been made by him, particularly, for the plaintiff's checks, which had resulted in finding the eighteen which were produced. Nor did he know that there had ever been any more checks of the plaintiff in the bank, since the last balancing.

All the evidence offered by the defendant was objected to by the plaintiff's counsel, on the ground of incompetency in general, on the issues in the case, as well as on the ground that the existence of genuine checks had not been shown; that it was secondary evidence. That the best evidence had not been produced, nor properly accounted for.

The report of the referee finds a balance due the plaintiff of $13 11. On the testimony of the witnesses and the books, taken together the referee bases his conclusion, "that genuine checks, or notes, drawn by the plaintiff, or by some person authorized by him, did exist, and that they were paid by the bank, and that such checks or notes corresponded in number and amount with the charges made by the defendant in its account." He rejects, at the same time two items which were tickets of the teller, for the reason, says the r~~~ testimoney does not connect the plaintiff with them," and "he cann~~ evidence of themselves, to establish a charge against the plaintiff.~~

**10**

of $10 and the other of $2 83, added to the balance of 28 cts. found due the plaintiff at the last settlement, make up the sum for which the plaintiff has judgment.

The report having been filed, the plaintiff filed a motion to set aside the finding of the referee, and give judgment for the plaintiff for the whole sum claimed by him on the evidence reported, and his exceptions to the report. The plaintiff also asked, that in case the finding of the referee should be set aside, and the judgment should not be given for the whole sum demanded in the evidence reported, that the case should then be set down for a trial by jury, or for a hearing by the court, on such evidence as might be produced on either side. The court overruled the motions and exceptions, affirmed the report and gave judgment accordingly. The plaintiff excepted, filed his bill of exceptions, and took his appeal to this court.

## HOLMES & HOLMES, for appellant.

This was not a proper case for a reference, under the new code of practice, because:

1. The issues to be tried, did not involve the investigation of a long account on either side, but simply the question of payment by the defendant, on checks of the plaintiff to the holders thereof, to the amount admitted to have been deposited, and $9 72 more. The plaintiff's case, not being expressly denied, stood admitted—Code of Prac., art. 7, sec. 12; and the defence was, payment to third persons on checks of the plaintiff.

2. It was not a case for an action of account at law, nor of equity jurisdiction, requiring an account to be taken and stated between the parties for the information of the court, before a final hearing and judgment, or decree. 1 Com. Dig. 115, Tit. acct. (A. 1.) an action of account lies only against a man as guardian, bailiff or receiver ; A. Plead. 125; Dinwiddie vs. Bailey, 6 Ves. 136.

3. The plaintiff was entitled to a trial by jury, but if the case was to be referred at all, without his consent, it should have been referred with directions to the referee to try the issues : Code of Prac. Art. 16 Sec. 2; 1 Ch. Plds. 116.

4. The New Code of Practice, so far as it can be properly construed, so as to authorize an order of reference of a case like this, for a trial by a referee, without the consent of parties, deprives the parties of this right of trial by jury, and is therefore unconstitutional. Const. of Mo. Art. 13 Sec. 8.

II. The referee did not merely take and state an account as ordered, but in fact proceeded to try the issues, and reported a finding of $13, 11 in favor of the plaintiff, which was treated by the court as a verdict, the report affirmed, and judgment given accordingly, without any further trial by jury, or hearing by the court.

III. The plaintiff's motion to set aside the finding of the referee and for judgment for the plaintiff, on the evidence reported, notwithstanding the verdict of the referee, for the full sum claimed by him, should have been sustained, because :

1. The evidence offered and admitted before the referee, was not sufficient in law to est⸱ ⸱⸱lish the defences set up in the answer, of either of them.

2. Incompetent evidence was admitted, for

3. On the issues made by the pleadings, the checks themselves, as negotiable instruments, and as containing the written authority to the bank to pay away the plaintiff's money to third persons, the holders thereof, have the legal character of *best evidence;* and no evidence of a secondary nature was admissible until the checks were produced, or properly accounted for.

1 Greenl. Ev. Sec. 84, 87; the written instrument, especially in case of negotiable securities, is to be regarded as the ultimate fact to be proved. It is the evidence agreed upon by the parties; it is not collateral, but the very essence of the transaction: 1 Con. & H's. Not  541, 549, 691, 697; Prince's adm'r. vs. Smith, 4 Mass. 455, books are not admissible to prove  money on orders, because the orders are the best evidence : Nye vs. Bellam, ⸱⸱broke vs. Johnson, 1 Coxe (N. J.) 288. Books are not evidence of pay- Bram vs. Kinlock, 2 Speers 284; Faume vs. Gray, 21 Pick. 247.

Shepard vs. The Bank of the State of Missouri.

4. That these entries, as verified by the witness, though of the nature of original evidence, in contradistinction to hearsay and admissible (as it may be admitted) in a proper case and for proper purposes, could, nevertheless, only be secondary evidence, at least, in reference to the issues to be proved in this case, viz., payment of the checks of the plaintiff to the holders thereof.

5. That, in order to lay a proper foundation of secondary evidence on such an issue, it is indispensable to prove, in the first instance the existence of the genuine instruments specifically by competent evidence, as well as the loss of them.

Porter vs. Wilson & Kelly, 1 Harr, (Pa.) 641, shows with what stringency the rule is applied, and the degree of proof that is requisite. Also, Kelsey vs. Hamner, 18 Com. 311; McPherson vs. Bathbone, 7 Wend. 216, genuineness must be first proved, and met by loose evidence. Also, Jackson vs. Frier, 16 J. R. 193; Woodworth vs. Baker, 1 Hill 172, the fact of existence is not to be inferred from mere proof of loss. Shrowders vs. Harper, 1 Harring 444, not only the loss, but the execution must be proved exactly as if the instrument were produced.

6. Suppose the checks had been proved to have existed in the hands of the bank as paid checks of the plaintiff and to have been lost, then secondary evidence would be admissible for the purpose, and only for the purpose, of proving the contents of the lost instruments.

7. The defendant did not propose to lay a foundation for the admission of secondary evidence, and these entries, as verified by the witnesses, were, in fact, admitted by the referee as competent primary evidence on the issues, though there was also some evidence in course of the proceedings, of a fruitless search; but, if this evidence is now to be considered as having been properly admitted, without regard to the order of its introduction, and for any purpose for which it might be found to be competent; and if the question is now to be considered, whether it was competent as preliminary proof, for the purpose of showing the existence and loss of the checks, it is still contended.

1. That the entries, of themselves, speaking as original evidence, furnish no competent, and if admissible at all, no sufficient proof of the existence of genuine checks, drawn by the plaintiff, or by his authority, of any specific number, dates, amounts, identity or substantial description, nor that they were paid to the proper holders or to any body. See cases above cited.

2. The testimony of the witness does not prove the existence of such checks, nor add any thing to the force of the entries (after they have been permitted to speak,) for he says he has no knowledge nor remembrance of the checks, nor the particular transactions, except from the entries in the books.

3. The inference which the witness draws from seeing the entries and from his recollection of the course of business of the bank, and his general practice as individual book keeper, that he must have had some authority before him; either checks, notes, tickets, or some such authority, is not competent evidence to prove any thing, much less the existence of a certain number and description of specific checks, and their distinctive identity as negotiable instruments. It is too vague for such a purpose.

4. The course of business and the practice of the book keeper, as stated by the witness and the entries, taken together, as facts proved, are not sufficiently certain and definite to warrant a court or jury in finding, from those facts alone, that a certain number of specific instruments existed as genuine checks of the plaintiff.

Taylor vs. Riggs, 1 Pet. 591, the existence, execution and contents must be satisfactorily proved, "and if that cannot be done," says Marshall, C. J., "the party is in the condition of every other suitor, who makes a claim, which he cannot prove."

IV. Even if the evidence was competent and sufficient, as preliminary proof, to show the existence and loss of the checks, so as to admit secondary evidence of their contents, it is contended that these entries, as verified are not competent as such secondary evidence, on the issue in the case, because,

1. They have no tendency to prove the *contents of the lost checks*, the only matter of en-

Shepard vs. The Bank of the State of Missouri.

quiry that would remain :  Metcalf vs. Van Bentheysen, 3 Comst. 424, mere vague and un-certain evidence will not do; also, 1 Pet. 591, Taylor vs. Riggs.

2. The entries being of cash items, in a cash account with the plaintiff himself, tend only to prove payments of cash to him, at the dates of the entries, and to the amounts charged, but payment to the plaintiff, generally, is no part of the issue in the case, and the answer expressly confesses that no cash was paid to the plaintiff himself on account.   The entry says, further, that the cash was credited to the defendant for a "check," but it is of no consequence what it was credited for; and its being for a "check," has no tendency to prove the contents of the lost checks of the plaintiff—neither the date, amount, payee, drawee, holder, payment to the holder, nor the identity of the "check," with any one of the checks supposed to have existed and been lost.   The words "by check," mean (1 Coxe 288) that a check was delivered to the plaintiff, for which the bank is credited; that is, the plaintiff is charged with so much cash, but the proof shows that no checks were delivered to the plaintiff.

3. The entries do not say, that the money was paid to any third person whatever, much less name the supposed holder of the plaintiff's check, so that it would be possible to rebut or contradict such a supposition; and if they did, then they would not be admissible, because those persons, as witnesses, would be better evidence:  Fannee vs. Gray, 21 Pick. 247.

4. Nor does the testimony of the witness connect these entries with the supposed lost checks, and identify them in number, description and amount, with sufficient certainty and particularity to warrant the inference, with any safety to the rights of the plaintiff, that those entries represent the contents of these lost checks; and independently of the entries, the witness has no knowledge nor remembrance of their contents.

5. It was not his duty, as book keeper, to pass upon or judge of the genuineness of the checks paid at the bank, nor the authority of the drawers, if drawn by others.

6 Notes of the customer, falling due at the bank, as well as tickets of the Tellers, were charged as checks in the ledgers, and he could not distinguish such entries.

7. Such notes were some times taken up with a check after being so charged, and mistakes and double charges were liable to occur, without detection by him.

8. Any amount of Teller's tickets may have been charged as checks, and such entries certainly have no tendency to prove the contents of the lost checks of the plaintiff.

9. Such errors and discrepancies are shown by the evidence, to have occurred in the accounts of the bank, and such looseness in the mode of doing business and of keeping the books, as to render the evidence of these entries, in such a case, altogether too uncertain to be relied upon with any reasonable safety to the rights of her customers.

10. Because it is the custom, well known to all persons who deal with the bank, to consider the checks of the depositor as the proper vouchers and only evidence of the payment of his money.   No entries of payments are ever made in the customer's bank book until it is written up and handed back to him with these vouchers, and it the evidence understood and agreed upon by both parties:  1 Greenl. Ev. Sec. 87.  ·

V. The testimony in relation to search for lost checks, taken in connexion with the evidence as to the manner of keeping the checks of customers in the bank, tends rather to show that there never had been any more than the eighteen checks of the plaintiff in the bank since his last settlement, than to prove that any checks had been lost.

VI. The proof of loss was not sufficient.   It does not show at what time, or how often, the search was made, and it may have been prior to, and not since the entry on the ledger of the bank in 1846, to the effect that the checks had been mislaid:  Porter vs. Wilson & Kelly, 1 Harr. 641.

VII. The plaintiff's application, to have the cause set down for a trial by a jury or a hearing by the court. after the respondent had come in and the exceptions to it had been overruled, should have been granted.

VIII. The plaintiff is entitled to judgment in this court, on the record, for the amount of his claim, and interest from the close of the account in August 1846.

Shepard vs. The Bank of the State of Missouri

BUCKNER, for the Bank.

1. The court did right in referring the matters in issue to a referee. To state an account was to decide all the issues in the cause, and the referee, therefore, acted properly in the discharge of the duties assigned him: Practice act 1849, art. 16, p. 91.

2. The entries made by the individual book-keeper contemporaneous with the alleged payments, were competent *original* evidence, as part of the *res gestæ:* 1 Green. Ev., secs. 100, §§ 15–16–20; Union Bank vs. Knapp, 3 Peck. 96; Doe vs. Turford, 3 B. & Ald.; 1 Smith's Lead. cases 225, 227; 1 Rawk 152; 2 Hill N. Y., 532.

3. If the entries were not competent, as original evidence, there was a foundation laid in the proof, to let in secondary proof, although not introduced in regular order.

RYLAND, J., delivered the opinion of the court.

Upon the above statement of facts, the petitioner below, appellant in this court, assigned for error the act of the court below, in referring the case to a referee, and the refusal to set aside the order making the reference; also, the act of the court in overruling petitioner's exceptions to the report of the referee, and in affirming the report and giving judgment thereon for petitioner for $13 50; and also the act of the court in giving judgment without a jury.

This was a proceeding under the new code of practice. The 16th article of the code provides for the appointment of referees. By this article, it is permitted, that all or any issues of law or fact, may be referreed upon the written consent of the parties. The court, where the parties do not consent, may, upon the application of either party, or of its own motion, direct a reference, in cases where an issue of fact shall require the examination of a long account on either side, or where the taking an account shall be necessary for the information of the court. The court can appoint one or more referees, where the parties themselves, do not agree upon the persons.

The court can appoint a general or special commissioner, to whom, matters mentioned in this article, may be referred, when the parties do not agree upon referees; who shall have the powers and proceed as commissioners in chancery are required to proceed, and with the effect.

We are inclined to the opinion, that the case before us, was one in which the court might well appoint a referee of its own motion. Here was a long account to be examined: sums of money had been deposited and withdrawn in smaller sums for several years. The items of these transactions were to be looked into, and a good and competent accountant, conversant in such matters, was better calculated to ascertain the

true position of the affairs between the parties, than any jury ordinarily chosen by the ministerial officers of our courts.

The petition claims, that there is no account to be settled, but a single issue of payment to be proved. This payment, however, is founded on a long list of items, extending through several years, and requires as much care and knowledge of keeping and making entries in books, as is necessary in keeping accounts between merchants and others.

Nor do we consider the statute, thus authorizing the court to appoint referees, unconstitutional, as trenching upon the trial by jury. It has even been the practice of the courts, in somewhat kindred cases, to appoint auditors or referees, to settle accounts; nor has the power ever been seriously disputed before. Without going into a labored defence of this power of the court, under the present statute, to appoint referees, in cases like the one before us, we will state it as our opinion, that this power is vested in our courts, and that it is not inconsistent with the provisions of our constitution, in trenching upon the right of trial by jury. Its practice often tends to the elucidation of accounts and transactions between man and man, and mainly contributes to the ends of truth and justice. We are not willing, therefore, to put a stop to its exercise, by throwing out doubts of its constitutionality. This settles the case, so far as regards the errors in respect to referees and trial by jury. We rule these points against the petitioner.

Nor do we feel disposed to disturb the case in respect to the exceptions taken to the report of the referees, and to the giving of judgment on the same, for the amount therein mentioned, to the petitioner. We do not say, that there may not be some errors in the proceedings of the referee, but, in our opinion, they do not touch the merits of the controversy, so as to injure, materially, either the petitioner or the defendant. "The supreme court shall not reverse any judgment of the circuit court, unless it shall believe, that error was committed, by the circuit court, against the appellant, and materially affecting the merits of the action." Art. XIX, § 17, Prac. Code 1848-9.

This case presents to us this feature: Here, a depositor of a large amount in bank, has been in the habit of drawing on the fund, in various ways, for several years; has his bank-book, in which the accounts have been kept, shewing the debts and credits. This book was balanced on the 1st of April 1842, and again on the 1st of August 1846. In this bank book, in which the accounts have been kept, and the entries made by a bank clerk, in the following memorandum: "All the checks from 1st April 1842, to 1st August 1846, are taken from the individual ledgers of the bank—the original checks misplaced—the amounts, date,

Shepard vs. The Bank of the State of Missouri.

&c., are correct, having compared with the books." This was in August 1846. The petitioner keeps this book, without making any objection, at the time, and without making any objection until years have elapsed, so far as appears from the record, when in September, 1849, he brings suit.

The law is well settled, in similar matters, between merchant and merchant. An account handed or sent to a merchant, who keeps it, without any objection being made for a long time, is presumed to be correct. Some judges say, this is conclusive, after two years have elapsed; others hold, that the objections must be made within two or three returns of the post.

It is true, these cases are between merchant and merchant, and are generally found in . chancery proceedings; but there is no reason why the same doctrine should not prevail between any other persons, with whom are accounts current or accounts of transactions in the ordinary course of business. There is a presumption of correctness, of fairness and of truth in the account thus kept, which becomes strong and forcible, after the acquiescence of the party charged with it, for months or years. The same reasons, which adopt this rule among merchants, will apply it to banks and their depositors. The same rules of evidence have heretofore prevailed in courts, both of law and equity. We now have no courts of equity, nor any equity proceedings, as formerly practiced; all the distinctions between the proceedings of these courts, have been destroyed, under the force of innovation. This action admits of all defences; the rules of evidence, therefore, apply in this case, so as to make that a defence here, which formerly was considered one in equity.

"Where one merchant sends an account current to another, residing in a different country, between whom there are mutual dealings, and he keeps that account two years, without making any objections, it shall be deemed a stated account, and his silence and acquiescence shall bind him; at least, so far as to cast the *onus probandi* on him:" Freeland vs. Haron and others, 7 Cranch, 151.

"A cash account, shown to a defendant, and not objected to by him, is sufficient evidence of his admission to go to the jury:" 1 Serg. & Rawle 406.

"Amongst merchants, it is looked upon as an allowance of an account current, if the merchant, that receives it, does not object to it in a second or third post:" Sherman vs. Sherman, 2 Vern 276.

It is the keeping of the account, by the person to whom it is sent, any length of time without making objections, which shall bind him and prevent his entering into an open account afterwards: Lord Hardwick,

in Willis vs. Jernegan.   In this  same case, the Lord Chancellor said: "Now there is no doubt, if  vouchers are delivered up at the  time, it is an affirmation, at least, that the account between the parties was a stated one, but to make it so, it is  not absolutely  necessary that they should be delivered up at the time the  account is  settled; for instance, in the case of bankers and their customers, it is seldom  done, but the drafts, which are made  on them are  constantly kept in files, and  at different times when they settle accounts with  you, they enter in a book, which they give you for that  purpose, the  several  receipts  and  payments during your transactions with their shops, and it would be imprudent in them to do otherwise; because, the vouchers  are  very  often of  use to them in clearing up any disputes between their shops and a third person:" 2 Atkins. 251.   See also Tickel vs. Short, 2 Vesey Sen., 239.   See 2 Walking. C. C. Rep., 390.   In this case accounts that had been rendered by Barker & Annesley to the defendants and returned by them without objection, are, it appears, proper to be  offered  in evidence, as well, and rather  better than if  Barker and Annesley  had, in the presence of  the defendants,  declared the partnership: the  partnership  of Barker & Annesley being the point in issue.

Applying this rule, which we think founded in common sense, and is in accordance with the common  course of human experience, to the case now at bar, and we come to the conclusion, that the petitioner has no cause of just complaint against the judgment of the court below.

There the petitioner is  a customer of  the bank,  in the language of Lord Hardwicke.   He has made his deposits; he draws, at various times for various amounts.   This course  of things continues for years.   On the 1st of April, 1842, this account between the petitioner and the bank is closed, or balanced: the same course of  procedure  still ensues until August, 1846; the accounts are again balanced; the bank book given to the petitioner is kept by a clerk of  the bank; he enters the deposits, to the  credit of  the petitioner; he  enters the  checks, notes, &c., of the petitioner, in the same book, to the credit of the bank; these are closed in August, 1846; a memorandum made of  the fact, of the correctness of the  account; the  examination of the  books of the  bank; the account handed  thus to the petitioner remains without objection, as we find in the record, for nearly  three years; then suit  is brought, and  objection made to having  the accounts between the parties referred to one competent man  as  referee, but  a jury is preferred!   I am free to say, that no case has ever been presented for my  examination,  where the above rule of accounts, adopted and practiced by the rules of chancery courts, both of  England and of  the States of this Union,  as most conducive to

the promotion of equity and substantial justice in the settlement of accounts between merchant and merchant, can be with more propriety invoked than in the case now at bar.

We therefore affirm the judgment of the court below, the other judges concurring.