FREDERICK W. SMITH, Appellant, *vs.* ARMSTRONG BEATTIE, THOS. B. WEAKLEY and WM. RIDENBAUGH, Respondents.

| 57 | 281 |
|----|----|
| 37a | 570 |
| 57 | 281 |
| 108 | 279 |
| 57 | 281 |
| 50a | 632 |
| 57 | 281 |
| 72a | 541 |

1. *Evidence—Banks, accounts of, how proved—Testimony of clerks and book-keepers, etc.*—Where the testimony of the clerks and book-keepers of a bank showed that the books were accurately kept, and that by the universal custom in the bank, entries were made and the books written up each day, from the checks of the customer or the tickets of the teller, and that the books were then balanced to verify their accuracy, *held,* that the books may be used in evidence to prove the accounts of the bank with its depositors.

*Appeal from Buchanan Circuit Court.*

*Ben Loan and F. Van Waters,* for Appellant.

*Allen H. Vories,* for Respondents.

WAGNER, Judge, delivered the opinion of the court.

This was a proceeding in the nature of a bill in equity, to enjoin the sale of certain real estate described in a deed of trust, executed by the plaintiff to one Ridenbaugh, as trustee, to secure the payment of four promissory notes, due to Beattie and Weakley.

It appears that the defendants, Beattie and Weakley, are bankers, and that plaintiff kept an account with them from the year 1864 to 1869, during which time he deposited a large amount of money with them, and drew the same out as he required it. It appears further, that defendants were in the habit of advancing money to him, and granting him accommodations to meet his necessities. Whilst these mutual accounts were thus running between the parties, the defendants purchased and had assigned to them certain judgments, which different parties had obtained against the plaintiff, and after holding them for some time, caused executions to be issued upon them and had the plaintiff's property advertised for sale to procure satisfaction.

In order to prevent a sale of the property, the amount of the several judgments, interests and costs were ascertained and the plaintiff gave four promissory notes for the same falling due at different periods, and the payment was secured by his executing the deed of trust, which is the subject of

this suit. After the notes became due, the plaintiff having failed to satisfy them, the trustee duly advertised the property for sale, and the plaintiff applied for an injunction to restrain the trustee from proceeding. A temporary injunction was granted, but on a final hearing it was dissolved, and the plaintiff appealed.

In the petition, as grounds of release, it is alleged that at the time he made the notes and executed the deed of trust, the defendants were indebted to him in a large amount, more than sufficient to pay off and satisfy the judgments for which the same were given; that they had received money belonging to him for which they had not accounted; that when the advertisement for the sale of the property was made, he was in Washington City, attending to some business, and that he was telegraphed to to come home immediately—which he accordingly did; that he arrived only two days before the sale on execution was to take place, but not in time to apply to a court for relief; and that to save his property from a sacrifice, he was induced to give the promissory notes and execute the deed of trust, it being expressly understood between the parties at the time that the trust deed was merely to stand as a security for whatever amount might be due the defendants upon a final adjustment and settlement of accounts between the parties.

The answer of defendants contained a specific and absolute denial of every allegation inserted in the petition.

It is first assigned for error, that the court permitted illegal evidence to be introduced, in allowing defendant's clerks and employees in the bank to swear to the correctness of the entries and accounts kept in the books, and in not compelling the books to be delivered up to plaintiff for his inspection.

It seems that, during the progress of the trial, at the instance of the plaintiff, an order was made on the defendants to produce their books in court that the plaintiff might have an opportunity of examining them. To this order the defendants returned a transcript of all accounts and transactions had between them and plaintiff, verified by affidavit. Afterward

they brought in the books, which were used upon the trial. For aught that appears, the plaintiff had full access to them whilst they were in court, and could have availed himself of their use upon the trial. The defendants proved by their book-keepers and clerks that the books were accurately kept, and they testified to the universal custom in the bank, as to how the entries were made in the regular course of business; that the entries were made and the books written up each day from the checks of the customer or the tickets of the teller, and that the books were then balanced to verify their accuracy. This was almost precisely the testimony that was admitted in the case of Shepard vs. The Bank of Mo., (15 Mo., 143) and was then regarded as too plainly admissible for argument.

With this foundation the books were then allowed to be given in evidence. The original checks and vouchers could not be produced as evidence, because it was shown, that they were delivered up to plaintiff. The cash book, which is placed on file by the plaintiff himself, shows, that at different periods the accounts were balanced, and yet there is no evidence that the plaintiff ever complained of any incorrectness in his accounts, until after this controversy arose. So, in reference to the debts for which these notes were given. Long after they were executed, the plaintiff was trying to borrow money to pay off all his outstanding obligations, and when enumerating his indebtedness, he placed the notes due the defendants among his liabilities. It would not be profitable to attempt a detailed examination of this testimony. We have looked through this voluminous record and are of the opinion that the evidence greatly preponderates on the side of the defendants, and fully sustains the decree of the courts. The plaintiff himself was the principal witness on his side of the case, and he is corroborated, it is true, by some other evidence, which is incidental and inconclusive. But the evidence on the part of the defendants is so decisive and overwhelming against him, that, where all the witnesses, so far as we know, are equally credible, there can be no room left for

doubt. The plaintiff seems to have been a man of large property, but deeply involved and constantly borrowing money to meet pressing embarrassments, with no very systematic manner of keeping his accounts, and not knowing with much exactness his real pecuniary condition.

For years he had dealings with defendants, and they assisted him in raising money. He might have supposed that he deposited more with them, and paid them more on claims they held against him than their books showed; but on the trial he certainly failed to satisfactorily prove it.

I am of the opinion the judgment should be affirmed. Judge Vories having been of counsel, did not sit; the other judges concur.*