ANCHOR MILLING COMPANY, Appellant, v. MICHAEL WALSH, Respondent.

St. Louis Court of Appeals, November 19, 1889.

1. **Evidence: BOOKS OF ACCOUNT.** Books of account of a party are not admissible in evidence in his favor, although supported by the suppletory oath of himself, or of the clerk who made the entries.

2. ——: ——. Such books may be used as memoranda to refresh the memory of a witness, but the witness must, after his memory has been thus refreshed, testify from recollection independent of the entries.

3. ——. Where a party produces books or papers in court at the instance of the opposite party, he may put them in evidence, although he would not otherwise have been entitled to do so.

4. **Practice, Trial: INSTRUCTIONS.** Although it is not error to refuse an instruction, stating that a party having the burden of proof must satisfy the jury " by a preponderance of evidence," the unexplained use of this expression in an instruction, which is given, is not ordinarily prejudicial error.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED, (*certified to the supreme court*).

*Geo. M. Stewart,* for the appellant.

*A. R. Taylor* and *A. A. Paxson,* for the respondent.

THOMPSON, J., delivered the opinion of the court.

This is an action to recover certain over-payments, alleged to have been made by the plaintiff to the defendant through mistake of the plaintiff and the fraud of the defendant. The answer was a general denial. The parties went to trial before a jury, and the defendant had a verdict and judgment, from which the plaintiff prosecutes this appeal.

I. The first error assigned is the exclusion of the shipping-book of the plaintiff which the plaintiff offered

in evidence. In order to understand this assignment of error, it should be stated that the evidence was to the effect that the defendant was employed by the plaintiff to do all of the hauling for the plaintiff at stated prices per barrel for flour and per sack for wheat; that the plaintiff had advanced a large sum of money to the defendant to fit him out in the business; that the plaintiff settled with the defendant on each Saturday evening for the week's hauling; that the manner in which the settlements took place was that the defendant would produce to the secretary of the plaintiff certain statements which had been ostensibly furnished to him from the shipping-books of the plaintiff which were kept in a warehouse separate and distinct from the plaintiff's counting-room, which statements purported to show the number of barrels, sacks, etc., which the defendant had hauled during the week. On the basis of these statements, the secretary of the plaintiff would figure up the amount due the defendant for the week's hauling, would deduct therefrom any advances of money which the plaintiff had made to the defendant during the week to enable him to pay ferriage, etc., and also would generally deduct a small sum to be applied in liquidation of the advance which the plaintiff had made to the defendant to fit him out in business, as above stated. The amount of hauling, which these statements represented the defendant as having done from week to week, increased to such an extent as to excite the suspicion of the secretary of the plaintiff; whereupon an investigation was had, and it appeared that the amounts were greatly in excess of the amounts shown by the shipping-books of the plaintiff from which the statements purported to have been taken. This led to an explosion, to a criminal prosecution and to the present action, in which the teams of the defendant were attached by the plaintiff. No question relating to the attachment is before us for examination.

The theory on which the plaintiff offered in evidence its shipping-books was that the weekly statements on which the defendant was paid were professedly drawn from them, and that they were hence a part of the *res gestæ*. Many cases from other jurisdictions are cited to support the view that these books should have been received in evidence as being books of original entries. We do not see anything in this case to take it out of the rule of evidence which has long been settled in this state, that the account books of a party are not admissible in evidence in his own favor, although supported by the suppletory oath of himself or of the clerk who made the entries in the books. This has been the settled rule in this state since the decision in *Hissrick v. McPherson*, 20 Mo. 310. This will appear from the following cases: *Cozens v. Barrett*, 23 Mo. 544; *Anderson v. Volmer*, 83 Mo. 403, 408; *Daum v. Neumeister*, 2 Mo. App. 597; *Lord v. Siegel*, 5 Mo. App. 582; *Hanson v. Jones*, 20 Mo. App. 595, 601; *Hensgen v. Mullally*, 23 Mo. App. 613; *Weadley v. Toney*, 24 Mo. App. 304; *Nipper v. Jones*, 27 Mo. App. 538. As we understand it, the rule in this state goes no further than this: The party or his witness may refresh his memory from the entries in the book, and then testify as to the fact independently of the entries, if he can do so after his memory has been thus refreshed. *Nipper v. Jones, supra,* per PHILIPS, P. J. In *Anderson v. Volmer, supra,* it was said by Mr. Commissioner PHILLIPS that "It was wholly incompetent for the plaintiff to testify to facts which he obtained alone from the book." These decisions distinctly show that the rule in this state is that a book of accounts cannot be made original evidence by producing testimony to the effect that it has been correctly kept.

The case of *Shepard v. Bank of Missouri*, 15 Mo. 143, does not seem to go against the rule thus stated at all; for that was the case of a stated account. But if it

does go against the above rule, it is to be observed that it was decided prior to the case of *Hissrick v. McPherson*, 20 Mo. 310, and is necessarily overruled by the latter decision.

The decision of the question is somewhat embarrassed by the language of Judge WAGNER in *Smith v. Beattie*, 57 Mo. 281, 283: "The defendants proved by their book-keepers and clerks that the books were accurately kept, and they testified to the universal custom in the bank, as to how the entries were made in the regular course of business; that the entries were made and the books written up each day from the checks of the customer or the tickets of the teller, and that the books were then balanced to verify their accuracy. This was almost precisely the testimony that was admitted in the case of *Shepard v. Bank of Missouri*, 15 Mo. 143, and was then regarded as too plainly admissible for argument." But this language was evidently founded on a misapprehension of what was held in *Shepard v. Bank of Missouri, supra*, and, besides, it ignored the subsequent decision of the court in *Hissrick v. McPherson*, 20 Mo. 310. Moreover, we do not find that rule as there laid down has ever been approved in any subsequent case, or that the case has ever been subsequently cited. Nevertheless, we should feel bound to follow and apply the doctrine there stated, if it had been necessary for the judgment of the court. But we find that that case is unlike the one now before us in a very important particular. The books of the defendant bank, which were there admitted in evidence for the defendant, had been *produced in court* at the instance of the plaintiff. Now, it is a rule of evidence that where books or papers are produced at the instance of the opposite party, the party producing them may put them in evidence, although he would not otherwise be entitled to do so. 1 Greenl. Ev., sec. 563. The rule and the reason for it are fairly stated by BIGELOW, J., in *Clark v. Fletcher*,

1 Allen (Mass.) 53, 57. It follows that in *Smith v. Beattie, supra,* the books, having been produced on motion of the plaintiff, were competent evidence for the defendant on any theory; and we prefer to restrain that case to the facts which were strictly in judgment, rather than to regard it as overturning a doctrine which has been re-affirmed in this state by repeated decisions.

Nor do we see any ground on which the present case can be taken out of the rule, on the theory that the shipping-books were a part of the *res gestæ.* We see no distinct evidence of the fact that the defendant examined the entries in the books or assented to their correctness. In the case of *Hanson v. Jones,* 20 Mo. App. 596, where we held the books admissible, the parties had accounted together and settled on the basis of an account contained in the plaintiff's books of account, and there was a mistake against the plaintiff which appeared on the face of the account. They were, therefore, regarded by us as admissible, on the footing of being admissions by the defendant against his interest, and as being relevant evidence, in that they showed the manner in which the settlement had been made and the balance struck, and thus showed the existence of the error and how it arose. We conceded that, if these facts had been out of the way, the books would not have been admissible as original evidence to prove the plaintiff's demand against the defendant. If such a state of facts had been disclosed by the evidence in the case now before us—if the evidence had tended to show that the plaintiff and the defendant had accounted together on the basis of the entries in these books, we should say that this case would be governed by that decision. But it simply appears in this case that another employe of the plaintiff named Timmons professedly drew off from these books the statements on which the account of the defendant was settled by the plaintiff's secretary and cashier, every Saturday night, and that the statements

so drawn off were taken from the plaintiff's warehouse, where the shipping-books were kept, to the secretary, sometimes by the defendant, and sometimes by Timmons. There is no evidence that the defendant was in any manner privy to the entries in the shipping-books; that he directed them to be made, was cognizant of the manner in which they had been made, or ever assented to their correctness.

In *Weadley v. Toney*, 24 Mo. App. 304, Judge ELLISON, speaking for himself, took occasion to say that he thought the view of Doctor Greenleaf, which would admit such book entries on the footing of necessity (1 Greenl. Ev., sec. 118) is the correct view. The members of this court are all of the opinion that it is desirable that the rule laid down in the Missouri cases should be reconsidered. We fear that it has produced a failure of justice in this case. We do not see how, under the rule which obtains in this state, a merchant can prove an account consisting of many items, especially after the lapse of much time from the transactions. Only a reckless or dishonest witness would take such an account, and say that, from his memory, refreshed by it, he could testify independently to the correctness of the different entries. But we have no power to reconsider the rule, nor can we deviate from it in deference to the decisions of the courts of other states, however much we may respect them. We are, therefore, unable to say that the court committed error in excluding these books.

II. If the court committed no error in ruling out these books of original entries, for stronger reasons it committed no error in excluding certain statements prepared by the plaintiff's secretary and cashier and its superintendent, and verified by the testimony of the persons who prepared them, which statements had also been made from books of original entry kept by the plaintiff, which books had been verified by the parties

who made the entries. Of course, transcripts from the books could not possibly be better evidence than the books themselves. This disposes of the second assignment of error.

III. At the request of the defendant, the court gave the following instruction: "The court instructs the jury that, if they believe from the evidence in this case that the plaintiff had in its possession statements showing the amount earned by the defendant each week, and that the plaintiff, by its agents, designedly lost or destroyed such statements, then the jury may take such fact into consideration in arriving at their verdict." The only evidence on which to base this instruction consisted of testimony to the effect that such statements were made out by Timmons, an employe of the plaintiff, and produced either by Timmons or the defendant to the plaintiff's secretary and cashier, as the basis of the weekly settlements which were made with the defendant, as already stated; that those statements were placed on a metallic file and were afterwards strung together by the office boy and placed upon a certain shelf in the plaintiff's office, and that they had disappeared and could not be found, although the most diligent and thorough search had been made for them. Beyond this there was no evidence pointing in the direction that these statements had been designedly lost or destroyed by any agent of the plaintiff acting in its behalf. It is quite plain that the statements were important instruments of evidence on behalf of the plaintiff. This appears from the fact that the plaintiff was obliged to give secondary evidence of their general nature, after laying a foundation therefor by proving their loss. It is also apparent that this action proceeds on the theory that a criminal conspiracy existed between the defendant and Timmons, another employe of the plaintiff, to cheat and defraud the plaintiff. If the jury could be authorized to resort to suspicion or surmise,

therefore, as to the manner in which these statements came to be lost, such suspicion would rather point toward the defendant and Timmons than toward any agent acting in behalf of the plaintiff. It is very plain to us that there was no basis afforded by the evidence on which this instruction could be thrust into the scale against the plaintiff. That its effect must have been very prejudicial to the plaintiff need hardly be suggested. It necessarily conveyed an intimation to the minds of the jurors that, in the understanding of the court, there was evidence warranting the conclusion, if the jury should see fit to draw it, that the agents of the plaintiff, acting in its behalf, had designedly suppressed evidence in the case. It is, of course, error to give an instruction to the jury upon a hypothesis which has no basis in the evidence; and where the instruction is prejudicial to the unsuccessful party, as in this case, the giving of it must operate to reverse the judgment. *Skyles v. Bollman,* 85 Mo. 35.

IV. Error is assigned upon the giving, at the request of the defendant, of the following instruction: "The court instructs the jury that the law presumes that each of the payments of money testified by Claus [the plaintiff's secretary and cashier] to have been paid to the defendant was money due defendant from the plaintiff, and the burden is on the plaintiff to satisfy the jury, by a *preponderance of evidence,* that such money so paid was not due the defendant." The plaintiff's objection to this instruction is based upon the use of the expression, "by a preponderance of the evidence." It is true that the judge may properly *refuse* an instruction couched in technical terms (2 Thomp. on Trials, sec. 2327, and cases cited). It has been held proper to refuse an instruction containing the expression "preponderance of evidence." *Clark v. Kitchen,* 52 Mo. 316. But in the subsequent case of *Berry v. Wilson,* 64 Mo. 164, our supreme court had occasion to consider

whether the giving of an instruction containing this expression would be ground of reversing a judgment, and the court held that it would not. Cases might, however, arise in which the use of this expression in an instruction would be ground of reversal; and such was the opinion of PHILIPS, P. J., in *Carson v. Porter*, 22 Mo. App. 179, under the peculiar circumstances of that case, though it is not clear that in that case the reversal of the judgment was predicated upon that ground alone. In the later case of *Steinkamper v. McManus*, 26 Mo. App. 51, 56, this court, following *Berry v. Wilson*, *supra*, held that the unexplained use of this expression in an instruction will not warrant a reversal of the judgment, though it is better not to use the expression without explanation. To that view we still adhere. We could not say that the use of the expression in this case was sufficiently prejudicial to work a reversal, especially in view of the fact that the court gave another instruction advising the jury that the burden of proof was on the plaintiff to establish the alleged mistake or fraud to the satisfaction of the jury.

But for the error of giving the instruction pointed out in the third paragraph above, the judgment of the circuit court will be reversed and the cause remanded. Judge ROMBAUER concurs. Judge BIGGS concurs in the result; but, he being of the opinion that this decision is contrary to the decision of the supreme court in *Smith v. Beattie*, 57 Mo. 281, the cause will be certified to the supreme court for final determination.