The Anchor Milling Co. v. Walsh.

---

The Anchor Milling Company, *Appellant*, v. Walsh.

DIVISION ONE.

1. **Evidence:** BOOKS OF ACCOUNT. An account book of original entries, fair upon its face and shown to have been kept in the usual course of business, is evidence, even in favor of the party by whom it is kept.

2. ——— : ——— : SECONDARY EVIDENCE. Upon proper proof of the loss of such book, secondary evidence of its contents is admissible.

*Certified from St. Louis Court of Appeals.*

AFFIRMED.

*G. M. Stewart* for appellant.

( 1 )  The shipping book offered in evidence was one of the books used by Timmons in making the statement of Walsh's earnings during the week, and to the correctness of which Walsh assented by receiving and accepting the statements so made.  The entries in the book were, therefore, original evidence as part of the *res gestæ*.  It was shown to have been correctly kept, and the entries in it were made in the ordinary course of business.  1 Greenl. Ev. [ 14 Ed.] sec. 115, and cases cited; *Bank v. Culver*, 2 Hill, 531; *Shepard v. Bank*, 15 Mo. 141; *Smith v. Beattie*, 57 Mo. 281; *Petleshall v. Turford*, 3 Barn. & Ald. 890; *Bank v. Michell*, 15 Conn. 206; *Bank v. Cowen*, 7 Humph. 70; *Pratt v. White*, 132 Mass. 477; *Miller v. Shay*, 145 Mass. 162; *Wright v. Towle*, 34 N. W. Rep. 578; *Montague v. Dougan*, 33 N. W. Rep. (Mich.) 840; *Morgans v. Adel*, Pac. Rep. (Cal.) 247; *Railroad v. Johnson*, 7 S. W. Rep. (Texas) 838; *Merrill v. Railroad*, 16 Wendell, 586.  ( 2 )  The statements prepared by appellant's cashier or secretary and its superintendent were competent evidence to submit to the jury in connection with the other evidence offered.  *Railroad v. Johnson*, 7 S. W. Rep. 838; *Ins. Co. v. Weide*, 9 Wall. 677.  ( 3 ) The third instruction, or the one referring to the loss of the papers, given by the court at the instance of the respondent, was clearly erroneous.  *First*. There is not a scintilla of evidence in the record on which to base it.  *Second*. It is totally irrelevant to any issue presented to the jury.  The court by its instructions withdrew from the jury every issue of fact save that presented by the testimony of Jones, and that testimony was supported by a book kept by him, which was offered and admitted in evidence. It was, therefore, palpable error to give such an instruction.  *Skyles v. Bollman*, 85 Mo. 31.  The instruction was calculated to confuse and

mislead the jury, and that respecting matters not in issue. *Donahue v. Railroad*, 83 Mo. 560; *Grier v. Parker*, 85 Mo. 107. (4) The fourth instruction given at respondent's request was also erroneous. It, in effect, directed the jury to find for defendant, unless plaintiff had established its case by " a preponderance of evidence." This was manifestly erroneous. *Clark v. Kitchen*, 52 Mo. 316.

*A. R. Taylor* and *A. A. Paxson* for respondent.

(1) The account book was inadmissible in evidence. *Weadley v. Tony*, 24 Mo. App. 308. (2) The third instruction was properly given. (3) If it cannot be said there is absolutely no evidence upon which the instruction could be predicated, the judgment must stand. *Noffsinger v. Bailey*, 72 Mo. 216; *Brink v. Railroad*, 17 Mo. App. 197; *Schooler v. Schooler*, 18 Mo. App. 78; *Gaty v. Sack*, 19 Mo. App. 477.

BLACK, J.—This was an action to recover overpayments alleged to have been made by the plaintiff to the defendant. A trial was had before a jury, which resulted in a verdict and judgment for defendant. The St. Louis court of appeals, to which the cause was appealed, reversed the judgment and remanded the cause for error in the instructions. That court, however, sustained the ruling of the trial court in excluding a shipping book offered in evidence by the plaintiff. On this question one of the judges deemed the opinion contrary to *Smith v. Beattie*, 57 Mo. 281, and for this reason the cause was then certified to this court.

Defendant had a contract with plaintiff whereby he was to receive a specified price for hauling wheat and flour to the mill and a specified price per barrel and sack for hauling flour and other mill products from the mill to different points in St. Louis and East St. Louis. Books were kept at the plaintiff's warehouse,

which was about a block distant from the mill, showing the wheat and flour received and shipments made, and these books disclosed the amount of hauling done by the defendant. A Mr. Timmons, who was one of the plaintiff's clerks at the warehouse, made up a statement on a slip of paper at the end of each week, showing the amount due the defendant. The plaintiff's cashier at the mill paid the defendant the amount due as disclosed by these statements. The business proceeded in this way from the first to the latter part of 1883, when the plaintiff caused the books to be examined and concluded that payments had been made to defendant largely in excess of what he had earned. Timmons and defendant left the employ of the plaintiff, and a criminal prosecution and this suit followed.

The shipping book, offered in evidence by the plaintiff and excluded by the court, was made up and kept in the following manner: Orders were sent from the office at the mill to the warehouse to send designated amounts of flour, etc., to designated places. The orders were then entered in the shipping book by Timmons, the shipping clerk, or by Mr. Warren, who had a general supervision over all the business at the warehouse. The orders were then copied into a small handbook for the use of the foreman, who delivered the articles to defendant's teamsters, made a note of the fact and returned the book to the clerk, who made entries on the shipping book, showing, among other things, the delivery of the articles to defendant. Mr. Warren says he always compared the orders with the book when made up, and then returned the orders to the mill office; that he knew the flour and other mill products were delivered to defendant from the information received from the small book, and in some cases from personal observation. These returned orders were lost or destroyed. Timmons, the shipping clerk, was not called as a witness. With this preliminary proof the

plaintiff offered in evidence the shipping book, but the court excluded it.

In *Hissrick v. McPherson*, 20 Mo. 310, plaintiff brought an action on an account for meat sold from day to day. He offered in evidence his daily account book, supplemented by an affidavit that the account was just and correct. This court held that the book, the entries having been made by the plaintiff himself, were not competent evidence, though supported by his supplementary oath. That case was, doubtless, ruled according to strict rules of common law. It constitutes the basis of the ruling of the court of appeals in the case in hand and in some other cases.

When the *Hissrick–McPherson case* was decided, parties to a suit could not testify in their own behalf. It remains to be seen what is the effect of subsequent legislation and subsequent rulings of this court. Section 1, of chapter 144, General Statutes, 1865, for the first time made parties to a suit competent witnesses in their own behalf. An exception is made where one of the parties to the contract or cause of action is dead or insane, and concludes : "*Provided, further*, that, in actions for the recovery of any sum or balance due on account, and when the matter at issue and on trial is proper matter of book account, the party living may be a witness in his own favor, so far as to prove in whose handwriting his charges are, and when made and no further."

The next section is a new enactment, and after stating that the court may, where the matter at issue and on trial is a proper and usual subject of charges on books of account required either party to produce his account books, declares : ".And no disputed account shall be allowed upon the oath of the party, when it shall appear that he has a book of original entries, unless such book shall be produced upon reasonable request."

The first section is almost an exact copy of section 24, chapter 36, General Statutes of Vermont of 1862 ; and

the second section is evidently modeled after a section in the statutes of that state concerning the action of account. In that state books of original entry are evidence in actions of account in favor of, as well as against, the party by whom kept. *Johnson v. Dexter*, 37 Vt. 641; *Hunter v. Kittredge's Estate*, 41 Vt. 359. That court, in construing these sections, takes them in connection with other connected sections of the statutes of that state, while we are to construe them in connection with other sections of our statute laws. The decisions of that court will be of some aid, but not decisive. Where, as there, one or two sections are taken from the body of a statute of another state and incorporated into our statute law on a given subject, we must construe all the sections of our law upon the particular subject together. Now, these sections, as they appear in our statutes, do not, in terms, say that a party to a suit on an account may introduce in evidence his account books; but all this is fairly implied. Why should the living party be allowed to be a witness in his own favor to prove in whose handwriting his charges are and by whom made, as is allowed by the last proviso to the first section, unless to lay a foundation for the introduction of the books?

If a living party to a cause of action may introduce his books in evidence in his own favor, as plainly implied by the proviso, then what possible reason can be assigned why he should not do the same thing where both parties to the cause of action on trial are living? And the last clause of the second section leaves a very strong inference that the legislature deemed books of original entry primary evidence. We think these sections were designed to and do give complete recognition to the rule which then prevailed and now prevails in most of the states and is sometimes called the American rule; namely, that contemporaneous book entries are evidence for as well as against the party by whom they are kept. Says Wharton: "In the United States, a

tradesman's book of original entries is, in most jurisdic-
tions, received in evidence as *prima facie* proof, when
supported by the tradesman's oath." 1 Whart. on Ev.
[ 3 Ed.] sec. 678.   On this subject another author, often
cited and generally followed by this court, says:   "In
the United States this principle has been carried farther,
and extends to *entries made by the party himself* in his
own shop books.   Though this evidence has sometimes
been said to be admitted contrary to the rules of the
common law, yet in general its admission will be found
in perfect harmony with those rules, the entry being
admitted only where it was evidently contemporaneous
with the fact, and part of the *res gestœ*.   Being the act
of the party himself, it is received with greater caution ;
but still it may be seen and weighed by the jury." 1
Greenl. Ev.[ 14 Ed.] sec. 118.   See, also, Wood, Prac. Ev.,
sec. 139.   Many cases are cited by these authors, and
they need not be repeated here.

At this place it may be well to notice the rulings of
this court made since 1865.   *Smith v. Beattie*, 57 Mo.
281, decided in 1874, was a suit in equity to enjoin a sale
under a deed of trust.   The defendants were bankers.
The plaintiff claimed that the notes secured by the deed
of trust were given as security for what might be due
defendants on a final adjustment of accounts, and that
defendants were indebted to him for moneys received
and not accounted for.   It appears the defendants
brought their books into court pursuant to an order
made on motion of the plaintiff, but the plaintiff did not
use them.   The defendants then proved by their book-
keeper and clerk that the books were accurately kept
in the regular course of business, that the entries were
made and books written up each day from tickets of the
teller and checks of the customer, and that the checks of
the plaintiff could not be produced because delivered up
to him.   With this foundation the books were given
in evidence, and this court sustained the ruling of the
trial court.

The case of *Anderson v. Volmer*, 83 Mo. 404, has little or nothing to do with the question in hand; for the question as to whether books of account should be received in evidence was not considered.

In *Nelson v. Nelson*, 90 Mo. 460, it was conceded on both sides that account books of a deceased person, when properly kept, are evidence in favor of the estate. In that case we held that certain items of the account should have been excluded, because it appeared upon the face of the book produced that the items were not made contemporaneous with the transaction recorded; but that case concedes the rule to be that book accounts are admissible in favor of the party who keep them when the entries are made at the time of the transaction, and section 118 of Greenleaf on Evidence is cited with approval.

In *Mathias v. O'Neil*, 94 Mo. 520, a bookkeeper at a bank was able to say he made certain entries, that the books were kept correctly, and that he believed them to be correct, but he could not recall the particular transaction. On this showing he was allowed to state his belief as to the fact recorded, and the ruling was sustained. Such evidence is sufficient to lay a foundation for the admission of the books themselves. *Bank v. Culver*, 2 Hill, 531.

The cases of *Smith v. Beattie, Nelson v. Nelson* and *Mathias v. O'Neil* show a decided tendency to a far more liberal rule than that which prevailed prior to 1865. They are in perfect accord with what is called the American rule. Indeed, one of them gives complete adherence to that rule—a rule which we have said was adopted by the General Statutes of 1865.

Since a party may testify in his own favor, it must be conceded that he, as well as his clerk or bookkeeper, may refresh his memory from entries made by him or under his eye, and then testify as to the fact with his memory thus refreshed. Now, in cases of an account composed of many items, all this means nothing more

The Anchor Milling Co. v. Walsh.

than reading the book in evidence. This we all know from daily experience in the trial courts. It is out of all reason to say that a merchant or his clerks can recall each item of the account, and a fair-minded witness will generally decline the attempt. Account books are admitted in evidence for the person by whom they are kept when the entries are made at the time or nearly so of doing the principal fact, because entries made under such circumstances constitute a part of the *res gestæ*. An entry thus made is more than a mere declaration of the party. It is a verbal act following the principal fact in the orderly conduct of business. Such is certainly the custom and course of business at the present day. We, therefore, conclude that an account book of original entries, fair on its face, and shown to have been kept in its usual course of business, is evidence, even in favor of the party by whom they are kept. It follows that the shipping book should have been received in evidence.

The abstract says another shipping book covering part of the time in question was placed in the hands of Timmons for the purpose of verifying a certain statement, that " the book and statement so given to Timmons were never seen afterwards by appellant, and the company was unable to further account for their loss." This is only the appellant's conclusion as to what his evidence disclosed concerning the loss of the book, and not an abstract of the evidence on that subject. We can only say that, upon due proof of the loss of the book, evidence of its contents should be received. *Ins. Co. v. Weide*, 9 Wallace, 677 ; *Holmes v. Marden*, 12 Pick. 169.

As the court of appeals reversed the judgment and remanded the cause for other errors, the judgment of that court is affirmed. BARCLAY, J., absent; the other judges concur.