Lord *v.* Moore.

to avoid the effect and meaning of a wholesome statutory provision on the part of the plaintiff.

LORD *versus* MOORE.

*It seems*, that the provision in § 20, c. 133, R. S., in regard to depositions taken on *written interrogatories*, has reference to such as may be taken before a magistrate on notice, as well as to those taken under a commission.

When a deposition is taken on written interrogatories, and incompetent testimony is drawn out in response thereto, such testimony may be excluded by the Court, although no objection was interposed at the time of taking.

While it is true that declarations of the defendant in no wise relating to the issue, are not admissible in evidence, yet if such declarations are so intermingled by him with matters pertinent to the issue, that they cannot be separated without modifying the pertinent matter or rendering its meaning obscure; then the whole of his declarations become admissible.

To impeach the testimony of a witness, who has testified to a conversation with the defendant involving him in a trespass, it is incompetent to introduce his declarations that he believed the defendant innocent.

Entries in books of a private character, made by different persons, and some of them unknown, are not admissible as original evidence.

ON EXCEPTIONS from *Nisi Prius,* HOWARD, J., presiding.

TRESPASS.   The parties resided in Berwick in this State,
and the allegation in the writ was for burning and destroy-
ing the plaintiff's shop with the goods therein, in Somers-
worth, N. H.   The store was destroyed on September 8,
1849.

The plaintiff introduced in evidence the deposition of
Isaac Pray, taken on notice to the defendant, in the State of
New Hampshire.   This deposition tended to show, that the
defendant procured the deponent and one Charles Curtis
to commit the trespass alleged.   Both parties appeared at
the taking of the deposition, and furnished their questions
to the magistrate on strips of paper, who wrote them down,
and it was thus taken on interrogatories.

On cross-examination, several questions were put for the
purpose of affecting the credibility of the deponent, which
were answered without objections by the plaintiff or his
counsel.

When this deposition was read to the jury, the plaintiff's
counsel objected to some of these cross-interrogatories and
answers, on the ground that the testimony was inadmissible.

The counsel for the defendant insisted, that the objection
should have been made at the time the deposition was
taken, and that it was then too late; but the Court sustain-
ed the objection and excluded the testimony, and the residue
of the cross-examination was read to the jury.

The plaintiff introduced the deposition of Charles Carr,
in which was detailed two conversations he had with the de-
fendant, a few days after the burning of plaintiff's store.
The defendant said he was glad the plaintiff was burnt up,
and wished that one Haley, (who was supposed to have
been instrumental in causing defendant and others to be
prosecuted for selling liquor,) had been in it.   He said there
was another building over there that we want blowed up,
and the conversation related to the defendant's attempt to
persuade the witness to blow up a certain building, and that
defendant would find powder, fuse, &c.   At the conclusion

of the conversation, defendant said, " we do not want to burn, but only blow up the building, to let them know we are after them. The other fire did not work just as we expected, we did not want to burn them out, but only to blow them up, because he employed Haley as a workman."

To all this conversation, excepting that relating to the burning of Lord's shop, the counsel for defendant objected, because it had no tendency to prove that the defendant burnt Lord's shop, or had any guilty knowledge of the burning thereof; and because the request to the witness to blow up a certain shop, subsequently to the burning of Lord's shop, was not competent evidence to prove the defendant burnt Lord's shop.

The Court overruled these objections and admitted the testimony.

For the purpose of affecting the credibility of Carr, the defendant introduced the deposition of George W. Brassbridge, who in detailing a conversation with the witness soon after an examination of defendant at Somersworth, in 1851, said, the witness Carr stated, " that he did not believe Mr. Moore knew any thing about the fire more than he did," (referring to the burning of plaintiff's store.)

This the Court excluded on request of the plaintiff's counsel.

The defendant offered in evidence the depositions of Knox and Works, who testified to similar declarations made to them by Carr, soon after the examination at Somersworth, which were also excluded.

It appeared by Pray's deposition, that he, on the night Lord's store was destroyed, at about sunset, had a conversation with the defendant of about five minutes, in his store cellar, when he, Pray, was requested to assist Curtis in blowing up plaintiff's store; *that* a little past 9 o'clock in the evening of that day, he saw defendant in his back yard, near the back side of his barn, and there received from him a bag of powder for the purpose of blowing up the plaintiff's store.

To rebut this testimony the defendant called Alice Law-rence, who testified, that she was at defendant's house on the afternoon and evening before the plaintiff's store was burned; *that* he retired to bed half an hour before sunset; and that she was so situated, that he could not have passed from his chamber to his back yard without her knowledge; and that he did not leave his chamber from the time he re-tired to bed until after midnight; *that* she was reading dur-ing the evening a book called "Afloat and Ashore," taken from Great Falls Library, only a few days before, in the name of her uncle George Moore.

To contradict the testimony of Alice Lawrence, the plain-tiff called Henry Y. Hayes, who acted as assistant librarian about that time, and who testified, that the book called "Afloat and Ashore" was taken out in the name of George Moore, on Sept. 15, 1849, and was not taken in his name be-fore. The No. of this book was 1561. He produced a book containing the entries of the books taken out and return-ed to said Library for a series of years including 1849.

The entries of books taken from said Library were writ-ten in figures with pencil. The entries under the name of George Moore, under the date of

Sept. 1, 1849, were 1244, 629.
Sept. 8, 1849, were 1368, 959.
Sept. 15, 1849, were 1561, 1228.

On cross-examination, the witness said he did not find this book charged to any one about that time or ever before; he could not say who made the entry of Sept. 15, but that he made those of Sept. 1st and 8th. Any director could make entries and take out books, who had a key, but the regular time was on Saturday evening. There were fifty-two stock-holders, any one of whom could get a book at any time, if he could get a key. Librarian used to keep the key at that time, as there had been some difficulty. The rules of the Library allowed only two books to one person. The most of the page, on which was kept the account of Geo. Moore, was in his handwriting. He took out two books on Sept.

1st, which were returned on Sept. 8, 1849, and on that day took out two more, which were returned on Sept. 15, and he then took out No. 1561, called "Afloat and Ashore," which was not returned till Oct. 6, 1849.

The plaintiff then offered the book of entries in evidence, to which defendant objected, assigning various reasons, but it was admitted by the Court.

To some requested instructions, withheld by the Court, the defendant excepted, but the disposition of the case makes it unnecessary to present them.

A verdict was returned for the plaintiff. The defendant excepted to the rulings, exclusions and admissions of testimony.

*Leland, Wells* and *Bell*, in support of the exceptions.

1. Those portions of Isaac Pray's deposition which were excluded, should have been admitted in evidence. R. S., c. 133, § 20. Before this statute no objections were necessary, except such as related to matters of form. 14 Maine, 141; 7 Maine, 181; 16 Maine, 257 and 128. But we suppose the statute has altered the rule.

2. That part of Carr's deposition, in relation to the blowing up of Stackpole's shop, was irrelevant, not necessarily connected with the other material parts, and would have a strong tendency to prejudice the defendant. It was not relevant to the issue. 1 Phil. Ev., (1st ed.) 137; *State* v. *Renton*, 15 N. H., 169; *Cole* v. *Commonwealth*, 5 Grat. 696; *Kinchelon* v. *State*, 5 Humph.; *Keith* v. *Taylor*, 3 Vt., 153; *Handley* v. *Call*, 27 Maine, 35; *Wilton* v. *Edwards*, 6 Car. and Payne, 677. Besides, this was not necessarily connected with the part which is relevant to the issue, and it is not for the plaintiff to draw out and offer such testimony.

3. The depositions of Brasbridge, Knox and Works, should have been admitted. Evidence may be given of the declarations of a witness to contradict what he had said on his examination, or to show that he did not tell the whole truth. *Staples* v. *Spoker*, 8 S. & R., 317; *Lamb* v. *Stewart*, 2

Ham. 230; *Charlton* v. *Uries*, 4 Grat. 58; *DeLailly* v. *Morgan*, 2 Esp. 69.

4. The book of entries of the Great Falls Library should have been excluded. It appears to have been kept in pencil, and in a very inaccurate manner. It can hardly lay claim to be such a book of records as to commend itself to the courts of justice. Moreover it was not kept, except in part, by the witness, nor did he know in whose handwriting the most essential part of it was kept. There is no evidence in whose custody the book was found. The rule as to admitting books of entries made by third parties is examined, and the result of the authorities given, in 2 Smith's Leading Cases, 139. Also in 1 Greenl. Ev. § § 115, 116, 120, 151, 155.

But if the entries made by Hayes, under date of Sept. 1 and 8, are admissible, that under date of September 15, and prior to September 1, are not admissible. 1 Greenl. Ev. § 115, 120; *McKenney* v. *Waite*, 20 Maine, 349; *Dow* v. *Sawyer*, 29 Maine, 117; *Doe* v. *Sanford*, 3 B. & Ad. 898; *Poole* v. *Dicas*, 1 Bing. 649; *Augusta* v. *Windham*, 19 Maine, 317; 1 Stark. Ev. 315, 320.

*Clifford* and *Jordan, contra.*

1. The deposition of Pray was not taken on written interrogatories within the meaning of the statute, and the second clause of § 20, c. 133, does not apply to it; consequently the objection to the excluded testimony was seasonably taken at the trial, under the express authority of the first clause of the same section.

2. But if the whole of § 20 applies to depositions taken in the usual method, like this of Pray's, still the testimony was rightfully ruled out, because it was illegal. *Polleys* v. *Ocean Ins. Co.* 14 Maine, 141.

3. The entire conversations with Carr, were rightfully admitted, because they were continuous and connected, so that the jury could not appreciate their full force with respect to the defendant's guilty knowledge of the Lord burning, without having the whole before them. *Commonwealth* v. *Call*,

21 Pick. 509; *Rex* v. *Wylie,* 4 Bos. & Pul. 94; *Rex* v. *Ellis,* 6 B. & C. 145; *McKenney* v. *Dingley,* 4 Maine, 172.

4. The testimony of Brassbridge, Knox and Works only involved Carr's opinion as to the defendant's knowledge of the Lord burning; he had testified to certain conversations with defendant, but upon the *effect* of those conversations he had given no opinion, and could have given none, because it would not have been evidence. The conversations were facts for the jury to judge of and not the witness. He testified to no belief, and therefore could not be contradicted.

5. The book of entries of the Great Falls Library was properly admitted, for it was the defendant, and not the plaintiff, who first introduced the contents of the book to the jury. The book was not offered or read to the jury until the cross-examination was closed. Surely it was too late for any objection to the book, after the defendant had put its contents into the case. He cannot except to his own acts.

The entries under date of Sept. 1st and 8th were in the handwriting of the witness, and in pursuance of his duty as assistant librarian, and therefore were admissible, even if they had been first offered by the plaintiff. The date, Sept. 15, 1849, was of no consequence at the trial, nor is it of any importance now. It was put in by defendant and it cannot be competent for him to object to it. It is well settled, even when the memorandum itself is not evidence, and particular entries only are used by the witness to refresh his memory, that if the opposite counsel cross-examine as to other entries in the same book, he makes it his evidence. 6 Car. & P. 280; *Ward & al.* v. *Abbott,* 14 Maine, 275. All the inquiries respecting the contents of the book were made by the defendant's counsel, and the case falls within the above rule.

But the entries were made in the discharge of a duty, in its nature official, under dates of Sept. 1st and 8th. The only use the plaintiff made of it, was to show, that vol. No. 1561, was not out in the name of Geo. Moore on Sept. 8, 1849. The cases cited on the other side do not apply to this case. With the rule therein recognized we do not

combat. We are content even to take the doctrine in *Augusta* v. *Windsor*, 19 Maine, 317, and the cases cited, particularly *Warren* v. *Greenville*, 2 Stra. 1129, and *Pattershall* v. *Turford*, 3 Barn. & Ad. 890.

The book was admissible as original evidence. 2 Hill, 534; 1 Salk. 285; 1 Greenl. Ev. § 116; *Snow* v. *Thomaston Bank*, 19 Maine, 269; *Hingham* v. *Ridgeway*, 10 East, 109; *New Haven Co. Bank* v. *Mitchell*, 15 Conn. 206; *Haven* v. *Wendell*, 11 N. H. 112; *Batchelder* v. *Sanborn*, 2 Foster, 325.

The witness identified the book as the record of the Great Falls Library.

*Eastman*, in reply.

RICE, J. — The first exception presents the question, whether, when a deposition is taken on written interrogatories, to which no objection is made at the time of taking, and incompetent testimony is drawn out in response thereto, such testimony can properly be excluded by the Court, at the trial.

A preliminary question has been raised in the arguments as to the meaning of the words, "written interrogatories," as used in the 20th § of c. 133, R. S. The plaintiff contends that these words apply to interrogatories when filed for the purpose of taking depositions on commissions; the defendant, that they apply in all cases where the interrogatories propounded to the witness are in writing.

By reference to § 15 of the same chapter, a solution of this question will be found. It is there provided, that the witness shall first be examined by the party producing him, on "verbal or written interrogatories," showing clearly that written interrogatories may be resorted to within the meaning of the statute, as well in taking depositions before magistrates on notice, as when taken on commissions. The reason for the rule would seem to apply with equal force in both cases.

In practice, it is well known, that the substance of the

testimony of a witness is often given voluntarily, or on the verbal interrogatories of the parties. In such cases, the proceedings are comparatively informal, and an imperfect opportunity is afforded to interpose specific objections. Not so, however, when interrogatories are reduced to writing. Then the same opportunity is presented for a distinct and specific objection, as when interrogatories are filed for taking depositions on commission, and the rule applies alike in each case.

The provisions of § 20, c. 133, were copied, substantially from § 26, c. 94, R. S., Massachusetts. The Court in that State have decided, that that provision does not require objections to the competency of a witness to be made when the deposition is taken, but such objection may be made at the trial. *Whitney* v. *Heywood,* 6 Cush. 82. This Court has decided, in the case *Polleys* v. *Ocean Ins. Co.,* 14 Maine, 141, that testimony, illegal in itself, cannot be admitted because objection was not made to the interrogatories before they were answered. Such was the established rule of law in this State before the enactment of the statute cited. Does that statute change the rule? We think not. The language of the statute is general, it is true; but in terms it applies to interrogatories only. It is however contended, that if objection cannot be taken to an interrogatory, after it has been answered, the answer itself, if responsive, should be received. To this proposition it is a sufficient answer, that the statute does not thus extend the rule; and to do so by construction, would be to interpolate into the statute a most important provision. Courts will not hold that established and salutary principles and rules of law are changed by legislative enactment, when it is necessary, to accomplish that object, to extend those provisions materially, by judicial construction, but will rather seek to harmonize the legislative provisions with existing law. This we think may be done in this case without doing any violence to the language of the statute.

There is a marked distinction between proving a fact

Lord v. Moore.

which is pertinent to the issue to be tried, in an informal manner, or by secondary evidence, and in proving a fact wholly foreign to the issue, by primary evidence, though produced in the most formal and technical manner. In the former case, the evidence is proper in itself; the objection is only to the form of its introduction, and is therefore matter of form, rather than of substance. In the latter the objection is to the evidence itself, to the substance in whatever form it may be produced. This latter species of evidence, being from its very nature illegal, should be excluded from the consideration of the jury, in whatever stage of the proceedings its character may be discovered. The party whose testimony is thus excluded loses no rights, because his evidence being from its nature illegal and incompetent, could not be changed by any modification or change in the form of the interrogatory, if objection should be made thereto. Not so when the objection is merely to the form of the interrogatory, or to the particular manner of proving a pertinent fact. Then, on objection being made, the interrogatory may be modified or withdrawn, or the fact proved in a mode consistent with the established rules of law. It is to this class of interrogatories that the statute applies. This exception is not sustained.

Objection is made to the admission, by the presiding Judge, of certain portions of the deposition of Charles Carr, in which the witness professes to detail conversations had by him with the defendant, in which the witness was solicited by the defendant to blow up a building of one Stackpole.

Declarations of the defendant, relating to matter in no wise connected with the subject matter then before the jury, could not properly be admitted in evidence. But when the declarations of a party which refer to other matters, are by him so intermingled and connected with other declarations which are pertinent to the issue to be tried, that they cannot be separated without modifying the signification of the pertinent matter, or to render its meaning

obscure, then the whole conversation becomes competent testimony, and should be admitted. It is the fault of the party, if in detailing one transaction or in speaking upon one subject, he so commingles it with other foreign matter, as to make it necessary to introduce the whole conversation, in order to render the part which is competent as evidence intelligible. Such we think was the case in the conversation referred to, and that the whole was therefore properly admitted.

The depositions of Brassbridge, Knox and Works, were properly excluded. They did not contradict the witness sought to be impeached, and were competent for no other purpose.

The fourth objection is entitled to more serious consideration. The situation and acts of the defendant on the night on which the plaintiff's property was destroyed, are very material. Isaac Pray had stated in his deposition, that the defendant had requested him, and one Curtis, to blow up the plaintiff's store, and had agreed to furnish powder with which to accomplish that object; and that on the night on which the property was destroyed, he and Curtis saw defendant about nine o'clock, in his (defendant's) back yard, near the back side of his barn in Berwick, *and that they then and there received from him a bag of* powder for the purpose of blowing up plaintiff's store.

To rebut this testimony, the defendant called Alice Lawrence, who testified, that she was at the defendant's house on the afternoon before the plaintiff's store was burned, and that the defendant retired to bed that day one half an hour before sunset, and that she was so situated, that the defendant could not have passed from his chamber from the time he retired to bed, until after midnight, that she was reading during the evening a book called "Afloat and Ashore," taken from the Great Falls Library, in the name of her uncle, George Moore.

Thus it will be perceived that in this stage of the trial time became material. Was the defendant present at the

Lord v. Moore.

barn, and did he deliver the powder as testified by the witness Pray? Bearing directly upon this point, is the testimony of the witness Lawrence. To show that she was mistaken as to the time when she was at defendant's house reading the book referred to by her, Hayes, the assistant librarian of the Great Falls Library, was called, and he testified that a book which he then produced, contained the entries of the books taken out of that library, and that the book, entitled "Afloat and Ashore," was taken out in the name of George Moore, on the 15th of September, 1849, and not before; and that he delivered said Moore other books from said library, which are charged to him under date of the first and eighth of September. The store of the plaintiff was burned on the night of the 8th of September, 1849.

On cross-examination, it appeared that this book of records was kept in pencil; that the librarian kept the key of the library; that any director could make entries in said book, and take out books, as could any stockholder, who could get the key. He further testified that nearly all the page on which he kept the account of books taken out by George Moore, was in his handwriting; but the entry of the book entitled "Afloat and Ashore," was not in his hand writing, but in that of some person unknown to him. He also testified that he knew the entries, under date of Sept. 1 and 8, were made in 1849.

In this position of the case, the book of records was offered in evidence by the plaintiff, and under the objection of the defendant, permitted to go to the jury.

The plaintiff now contends, that the contents of the book were drawn out by the defendant on cross-examination, and therefore, that he cannot be permitted to interpose any objection to the introduction of the book itself.

The witness had, in his examination in chief, stated certain facts in relation to the delivery of books to Moore, and the time when they were delivered. The cross-examination only disclosed the fact that his knowledge of the time when

the book, "Afloat and Ashore," was delivered to Moore, was obtained wholly from seeing the entry in the book of records, in the hand-writing of some person unknown to him. This could in no just sense be deemed the introduction of the book or its contents, as evidence, by the defendant. The object of the cross-examination, was to show that the statements of the witness were not legitimate evidence for the consideration of the jury; he testifying to facts of which he had no personal knowledge.

The circumstances under which entries made by third parties, in public records, or books of private individuals, have been much discussed both in this country and England, and the principles upon which such entries have been admitted as original evidence, are by no means uniform. Perhaps the rule adopted by this Court in the cases *Augusta* v. *Windsor,* 19 Maine, 317, and *Dow* v. *Sawyer,* 29 Maine, 118, is based upon as satisfactory reasons as any found in the reported cases. To make such entries in books of a private character admissible, the books in which they are made must have been fairly and regularly kept, the entries must have been made by a deceased person whose duty it was to make them, or in the regular course of business, who had personal knowledge of the subject matter entered, and whose situation was such as to exclude all presumption of his having any interest to misrepresent the fact recorded.

Applying this rule, as indeed any other found in the adjudged cases, and the result cannot be doubtful. The book was kept in pencil, and on that account the entries were liable to be obliterated, or might easily be modified; entries were made upon it by a very large number of persons, who had access to the library when they desired, and the entry which was most material, that of Sept. 15, was made by some person whose handwriting was unknown to the witness. Entries made in books thus kept, and under such circumstances, are not admissible as original evidence by any established rules of law. The only purpose for which they could have been properly used was to refresh the

recollection of the person by whom they were actually made.

Such was the peculiar posture of affairs at the time when this book was introduced, that it would be difficult to say that it had no influence upon the minds of the jury. The presumption is very strong that it would have very considerable weight with them. The book should have been excluded. *The exceptions are sustained, and a new trial granted.*

SHEPLEY, C. J., and CUTTING, J., concurred.
HATHAWAY, J., concurred in the result.