MISSOURI ELECTRIC LIGHT AND POWER COMPANY, Defendant in Error, v. PATRICK J. CARMODY, Plaintiff in Error.

St. Louis Court of Appeals, December 7, 1897.

1. **Contract**: BREACH: RIGHT TO RECOVER DISCOUNT, ON FAILURE OF CONSIDERATION BY WRONGFUL ACT OF PARTY. In a suit on a contract, whereby defendant was to use electric current exclusively for lighting his premises for five years from the date thereof, in consideration of which he was to receive a certain discount from the specified rate, to

be allowed from the monthly accounts rendered by plaintiff, on an assignment of a breach of the contract, that defendant failed, on demand, to repay the discount allowed,—*Held:* That he was bound to refund the values thus received, the consideration for which had failed by his wrongful act.

2. **Evidence:** METER BOOK: REGISTER: COMPETENCY. A meter book containing meter readings, and a register showing debits and credits, were properly admissible in evidence, the former as a book of original entries, and the latter as a companion book necessary to a full exhibit of the state of defendant's account.

*Error to the St. Louis City Circuit Court.*—HON. PEMBROOK R. FLITCRAFT, Judge.

AFFIRMED.

*Chester H. Krum* for plaintiff in error.

*Albert Blair* and *F. G. Eaton* for defendant in error.

BLAND, P. J.—The defendant in error sued the plaintiff in error in the circuit court, city of St. Louis, upon the following contract:

"This agreement, made and entered into this first day of November, 1893, by and between P. J. Carmody, of St. Louis, Missouri, party of the first part, and the Missouri Electric Light and Power Company, a corporation organized under the laws of the state of Missouri, party of the second part, witnesseth; that

"Whereas, the party of the first part is the lessee of buildings located at 215 North Sixth street, 513 North Sixth street, and 724 Olive street, and is desirous of having the same lighted by incandescent electric light; and

"Whereas, the party of the second part is engaged in the manufacture and sale of current to produce such incandescent electric light;

"Now, therefore, the party of the first part and the party of the second part, in consideration of the sum

of one dollar by each to the other in hand paid, the receipt of which is hereby acknowledged, have agreed as follows:

" '*First.* The party of the second part shall furnish to the party of the first part, when called upon, the necessary current to illuminate approximately twenty-nine sixteen candle power incandescent electric lamps, on the premises hereinbefore specified, and the party of the second part shall supply to the party of the first part all the necessary plain lamps to be used in the buildings for renewals, upon the return to the party of the second part of the burnt out lamps unbroken; the party of the first part agreeing to pay to the party of the second part for such current at the rate of one cent for each unit, such unit being the energy required to maintain one lamp of sixteen candle power for one hour, measurement to be ascertained by meter furnished by the party of the second part, and payment for such current to be made at the office of the party of the second part by the tenth of the month following the service.

" '*Second.* The party of the first part agrees to use electric current exclusively for lighting the premises herein specified for a period of five years from date of this instrument; in consideration of which the party of the first part shall receive a discount of twenty per cent from the rate hereinbefore specified, the same to be allowed from the monthly accounts rendered by the party of the second part.

" '*Third.* It is, however, provided that if the party of the second part shall be compelled, at any time, by the act of God, to temporarily discontinue the operation of its lines for the supply of electricity, then it shall not be liable for any failure to supply electricity thereby incurred, and in all cases the party of the second part shall use immediate and extra efficient efforts

and diligence to resume the operation of its lines at the earliest practicable moment.' "

The petition counts upon the breach of this contract. *First.* That the defendant in error furnished electrical current to the plaintiff in error from November 1, 1893, to April 21, 1896, at which last named date the plaintiff in error refused to further use the electrical current furnished by defendant in error; that during the time of this service the defendant in error, in consideration that plaintiff would continue to use electricity exclusively in its premises for the full contract period of five years, allowed a discount to plaintiff in error of twenty per cent upon the successive monthly bills rendered plaintiff in error and paid by him, the aggregate of such discounts being $245.19, for which judgment was prayed. · *Second.* That the defendant in error supplied electricity to plaintiff in error for the months of March and April, 1896, amounting to four thousand, eight hundred and twenty lamp hours, at the contract rate of one cent per hour, aggregating $48.28, for which judgment was prayed.

A third cause of action is based upon an alleged indebtedness for electricity furnished for arc lamps during the months of March and April, 1896, amounting to five thousand, six hundred and fourteen lamp hours at five cents per hour, aggregating $280.70, for which judgment was asked.

The answer was a general denial. The case was sent to a referee, who tried all the issues, reporting in favor of defendant in error for the several sums sued for. The plaintiff in error filed exceptions to the report of the referee. These were ruled against him; he filed his bill of exceptions, and sued out a writ of error from this court.

The points relied upon by the plaintiff in error for a reversal of the judgment apply to the competency of

the proofs offered of the quantity of electricity furnished (this goes to the whole case), and to the recovery on the first count of the petition.   His contention as to this count is that the discount of twenty per cent on monthly bills settled and paid prior to any breach of the contract is not recoverable under the terms of the contract.   We will first consider the second point.   By the second paragraph of the contract, "the party of the first part agrees to use electric current exclusively for lighting the premises specified for a period of five years from date of the instrument, in consideration of which he was to receive a discount of twenty per cent from the specified rate, to be allowed from the monthly accounts rendered by the party of the second part."   It is conceded that Carmody, after April 21, 1896, refused to further use the electric current furnished by the defendant in error, and from that date obtained light from other sources; in other words, he broke his contract to use electric current for lighting his premises for five years; and the consideration upon which he had received the twenty per cent discount on monthly bills, under the terms of his contract, failed by reason of this breach made by him.   The price which he agreed to pay was one cent for each unit of electric power, but in consideration that he would continue to use this electric light for the period of five years, the defendant in error agreed to give him a discount of twenty per cent on this agreed price; he accepted this discount, and afterward, of his own volition and without just cause, set aside and abrogated the only consideration upon which he had received it.   It is true, as contended by plaintiff in error, that the monthly bills were settled on an account stated, and that the payments were payments in full; but the parties met and made these

*(margin note:* CONTRACT: breach; right to recover discount, on failure of consideration by wrongful act of party.*)*

monthly settlements with the contract in full force and
before them, and they were made in strict accord with
the terms of the contract, and in anticipation that
plaintiff in error would earn these discounts by keep-
ing his contract to the end.   When he broke the con-
tract, the full contract price of the electric power
furnished him immediately became due, because of the
fact that he had repudiated and set at naught the con-
sideration upon which he had been allowed the dis-
count; and no reason can be assigned why he should
not be held to refund the values he had thus received,
the consideration for which had failed on account of
his wrongful act.

The electric current supplied plaintiff in error was
measured, as in all cases of public service, by meters
installed in the several places of business mentioned
in the contract. These meters were owned
and controlled by the defendant in error.

EVIDENCE:
meter: register.
competency.

At about the end of the current month the
inspector of the respondent in error went to the places
where the meters were and took off the readings of the
dials of the meters, and jotted them down in pencil in a
memorandum book prepared for the purpose and des-
ignated a "route book;" these readings, as entered in
the "route book," indicated the reading on the meter
dials in figures, under the name of the appellant in
error and his address. These "route books" were trans-
mitted to the office of respondent in error on the day
the meter readings were taken and placed in the hands
of a clerk, and the figures shown on the route book were
immediately transcribed by him onto another book
called the "meter book," where the customers' accounts
were designated by numbers; these figures were again
transcribed from the "meter book" to a book called
the "register;" in this book the customer was desig-

nated by his name, place of business, and his number as it appeared on the "meter book."

The meter readings taken from the "route books" gave the gross readings of the meters. To get the net reading for a given month, it was necessary to deduct from the gross reading of the current month the gross reading of the previous month; this calculation was made and carried out on the register only, and the current charges carried out and expressed in money, and when payment was made, the credit was entered opposite the charge in the register. Special inspectors, when required, took out meters; when this was done a special blank was furnished, upon which was entered a memorandum of the readings, and this was returned to the office, and the reading entered in the meter book. The meter and register were the permanent books of the defendant in error, in which were entered and kept the accounts with its customers. The "route books," in which the memoranda of the readings of the meters in the several places of business of plaintiff in error, the meter book and the register, were all identified and offered in evidence.

Objection was made to the meter book and register as evidence by plaintiff in error, upon the ground that they were not books of original entry. It is not pretended that the "route books" were more than memorandum books, and that they did not express the net readings of the meters. It is shown by the evidence that these books were turned into the office of the defendant in error on the day the entries were made, and were immediately transcribed to the meter book by a clerk; from the meter book the meter readings were again transcribed to the register, and the account of the customer was carried out and expressed in dollars and cents. On payment, the account was credited opposite the entry of the account in the register book.

Where goods are sold during the day by a servant, and a memorandum of such sales is handed in to the master in the evening, and entries of such sales are immediately made of such sales from the memoranda made by the servant, the entries are original. *Ingraham v. Bockius*, 9 S. & R. 285. So entries transcribed from a slate or card on the day or day after they were made are original entries. *Paxon v. Hollis*, 13 Mass. 427; *Landis v. Turner*, 14 Cal. 573. Books which are continuously used for the purpose of making original entries and which record the transactions immediately after they take place in the due course of business, and which itemize the accounts entered in them, are books of original entry. *Jones v. Long*, 3 Watts, 325; *Carr v. Sellers*, 100 Pa. St. 169; *Keith v. Kibbe*, 10 Cush. 35; *Dexter v. Booth*, 2 Allen, 559; *Taylor v. Coleman*, 20 Tex. 772; *Lord v. Moore*, 37 Me. 208; *Luce v. Doane*, 38 Me. 478; *Bentley v. Ward*, 116 Mass. 333. The route books were but memorandums of the gross readings taken from the meters, and were handed in on the day the readings were taken to a clerk of respondent in error, who immediately made his entries from them in the meter book. According to all the later authorities and some of the older ones, the meter book was a book of original entries and admissible in evidence. *Robinson v. Smith*, 111 Mo. 205; *Smith v. Beattie*, 57 Mo. 281; *The Anchor Milling Co. v. Walsh*, 108 Mo. 277; *Seligman v. Rogers*, 113 Mo. 642. Entries made under similar circumstances are by some of the courts regarded as part of the *res gestae*. *Bailey v. Bank*, 111 U. S. 216; *Anchor Milling Co. v. Walsh, supra*. No particular form of bookkeeping is required, nor need they be kept according to an approved form; a book used for the purpose of entering business actually done and immediately after it is done, and used continually for that purpose in the due course of business, and

which itemizes the accounts entered therein, and which bears the evidence of fairness and integrity, is all that is required.    3 Wait, L; & Pr. [5 Ed.] 506; *Wilson v. Wilson*, 6 N. J. L. 114; *Carr v. Sellers, supra*.    According to the testimony in this case the meter and register books kept by the defendant in error and offered in evidence on the trial were the only books kept by it in which the accounts of customers were entered.    The meter book, as we have seen, according to all the later authorities, was a book of original entries; the register was a copy of this book, with the addition of the calculation of the customer's account made and carried out; they were companion books, and both necessary to show the state of the account of plaintiff in error.    The route books were also produced and filed as exhibits; so that all the memorandums and books were in evidence before the referee and subject to the inspection of the appellant in error.    The meter book, as to the meter readings, was a book of original entries, and the register, as to the debits and credits, was necessary to a full showing of the state of the account of the plaintiff in error, and for that reason and to that extent was admissible in evidence.   We are unable to find how the plaintiff in error could have been prejudiced by the admission of these books, as all the entries and memorandums from which they were made were offered in evidence along with them, and if errors or false entries had occurred, it would have been an easy matter to have discovered and corrected them. No prejudicial error appearing, the judgment is affirmed.

All concur.