EVELYN E. LEACH AND BERNARD LEACH, RESPONDENTS, v. EMIL BOPP, WALTER T. BOPP AND FRED RETHMEIER, APPELLANTS.*— 12 S. W. (2d) 512.

St. Louis Court of Appeals.   Opinion filed January 9, 1929.

*Corpus Juris-Cyc References: Mechanics' Liens, 40CJ, section 11, p. 51, n. 60; section 59, p. 81, n. 93; section 291, p. 241, n. 93; section 292, p. 242, n. 8, 14; section 659, p. 463, n. 18.

*George F. Heege* for appellants.

*S. C. Taylor* for respondents.

DAUES, P. J.—This is a suit in equity, authorized by statute, in which plaintiffs, as the owners of certain real estate, brought in mechanics' lien claims against such real estate to determine their respective rights. The court on its own motion appointed a referee to try the issues of law and the facts. It seems, however, that section 7245, Revised Statutes Missouri 1919, forbids that a referee be appointed on the court's own motion when the case is brought under the equity statute. [See Johnston v. Pump Co., 274 Mo. 414, 202 S. W. 1143.] The referee passed on the objections to the introduction and exclusion of evidence. Some of the claims were adjusted by compromise, leaving for ultimate determination the lien claims of certain subcontractors, who are appellants here, and the rights of plaintiffs and defendants regarding the form of the judgment. Appellants' separate appeals were consolidated.

Plaintiffs owned a residence in St. Louis county. Stix, Baer & Fuller Dry Goods Company, a corporation, had a contract with the owners for the remodeling and redecorating of the buildings. Plans and specifications were drawn and the cost of the whole undertaking was contracted for at $7400. After the Stix company entered into the contract, it sublet some of the work to Theodore Bopp, Sr., who, in turn, secured subcontractors for the different work, among them being appellants. When the work was completed by Bopp and his subcontractors, the owners refused to pay on the ground, among other, that the work was defective. Then the Stix company, the general contractor, filed its mechanic's lien for approximately $6000, the balance claimed as due from the owners. Plaintiffs then brought this equity suit to bring the various mechanic's lien claimants into court in order to have all the liens adjudicated in one suit. When

these claims were asserted, plaintiffs denied defendants' right to a lien. It appears that the Stix company compromised its claim, and we therefore address ourselves to the result reached as to the appellants here.

The referee found, and the court approved, first, that defendant Rothmeier receive a judgment against the defendant Theodore Bopp, Sr., in the sum of $337.70 with interest, but that the lien be denied, and found against plaintiffs on their counterclaim.

The claim of defendant Emil Bopp is for painting work and materials furnished under contract with the general contractor, Theodore Bopp, Sr., in one count; another count is for work and labor under an agreement direct with the owners. The referee found under the first count that the lien account was not properly separated and stated and therefore was not lienable; that the evidence showed that same was not a just and true account between the parties. The referee recommended a judgment in favor of Emil Bopp as against defendant Theodore Bopp, Sr., on this count for the sum of $1264.49 with interest. On the second count, being for $201.15, the referee found that the items were fatally intermingled, and, further, that the account was not true and correct, and found in favor of plaintiffs, the owners, on this count.

As to Walter T. Bopp, there were three liens filed. The first was for labor and material furnished under his contract with Theodore Bopp, Sr.; the second was a lien claim for work and labor under an agreement direct with the plaintiffs, and the third was for labor and materials furnished under a contract with Theodore Bopp, Sr. The liens were denied, however the referee recommended a judgment in favor of this defendant against the contractor, Theodore Bopp, Sr., for the work done under contract with said Theodore Bopp, Sr.

This, briefly, recites the finding of the referee in so far as the issues here are concerned and which the court approved and vitalized in the judgment. The record is extremely lengthy and involved. We will discuss the pertinent portions thereof in the course of the opinion.

The record disclosed that the case was tried below by the referee in seeming apprehension that a trial for the establishment of a mechanic's lien presents unusual technicalities and niceties.

As we read the statutes and decisions on mechanic's liens, we see no fearsome involvement, and certainly the trial procedure is no more intricate than in an ordinary case. Section 7227, Revised Statutes Missouri 1919, provides that "the court shall ascertain, by a fair trial in the usual way, the amount of the indebtedness for which the lien is prosecuted."

It was the early view (see Edgar v. Salisburg, et al., 17 Mo. 271, and Blakey v. Blakey, 27 Mo. 39), that we should construe the mechanic's lien law strictly, since the statute was in derrogation of the common law. However, now the directly opposite view is taken by subsequent decisions of our Supreme Court and the Court of Appeal. It is now firmly settled that these statutes should be liberally construed. A full review of the cases showing this change is set forth in Carroll Contracting Co. v. Newsome, 201 Mo. App. 117, 210 S. W. 114. That case further attempted to clarify by unequivocably establishing, what we think to be the correct rule, that a subcontractor may make lienable charges for superintendence charges, and while in that case the charges were for superintendence of a subcontractor which was a corporation, we entertain no doubt that where such contractor is not a corporation, charges for superintendence are lienable items. We have recently ruled in Fagan v. Brock Motor Car Co., 282 S. W. 135, that commissions charged for superintendence, planning and engineering made in a lump sum, where such item was denominated in the contract, were lienable. There can be no doubt that a charge for superintendence or "overhead" is a service entering into the construction of a building which is lienable, and where the suit is on quantum meriut, the issue arises whether the service was rendered and its reasonableness. Such charges need not be set out and applied to each item of material and labor.

In Mercantile Co. v. Investment Co., 100 Kan. 597, the Supreme Court of that State pointedly ruled that a "profit" of twenty per cent to actual cost could be added by the material men.

Again, after much prior confusion, it is now firmly settled in State ex rel. v. Reynolds, 232 S. W. 1035, that where a definite price has been agreed upon between contractor and owner for a completed structure, the contractor's lien statement need not set out the items of various materials furnished and the labor performed in complying with such contract. A statement of the making of such contract and its performance is sufficient. [McCarthy Lbr. & Const. Co. v. Kinder et al., 206 Mo. App. 287, 225 S. W. 1024.]

With this clarification, we will consider the claims of Fred Rothmeier, Emil Bopp and Walter T. Bopp separately.

As to Rothmeier, the referee held that the ledger kept by this defendant was not admissible for the reason that the entries in the book were taken from memoranda slips of time of the men made by some one of the men on the job, and that the entries as to materials were made up from bills and tickets. That is to say, the record shows that this defendant did as was the general custom, and necessarily must be the custom, that is, he would take the time of his men at the different jobs from some foreman or mechanic who

would keep same on slips. These would be collected by the contractor, or the men would bring them in, and then they would be permanently entered upon his books, showing the name of the men, the work and number of hours and the job upon which they worked. The referee not only refused to admit the book, but declined to allow Rothmeier to refresh his memory from such book, and this, appellant says, was error. The defendant admitted, on cross-examination, that he did not "stay on the job all day to see whether the men worked there all day or not;" that when he had one man working on the job, the man himself would keep his time and turn it in. Then the following questions and answers appear:

"Q. And from that entry you made the entry in your books from the time the man handed it to you? A. Yes, sir.

"Q. He handed it in to you and you kept it in the books? A. Yes, sir.

"Q. Is that the way you kept this account all the way through? A. Yes, sir."

And as to the materials, he testified that he bought same and when he got a bill as the materials were delivered and used he would enter same in the book. The book was admissible. The weight of it might be another question. The rule is succinctly stated in 22 Corpus Juris, secs. 1055-56, as follows:

"Sec. 1055. It is not an objection to the competency of a party's books that the entries therein were transferred from a slate, card or memorandum book in which they were first entered for a temporary purpose. In such cases the entry of the charge in the first instance is regarded as a memorandum preparatory to permanent evidence of the transactions, and the entry in the regular book of accounts of the party is deemed to be the first and original entry and as such competent proof, with the oath of the party, of the charges therein made. Especially is this true where the original entries or memoranda are incomplete and the final entries contain the first entries of the charges in their entirety. Original entries transferred from a slate to a daybook and from a daybook to a ledger may be proved by the slate, daybook and ledger where the entries in neither are complete in themselves. . . :"

"Sec. 1056. It is not necessary that the temporary memoranda should have been made by the party himself; they may be made by his servant or employee, and afterward entered by the party in his book of original entries."

This is the rule in Missouri. [See Missouri E. L. & P. Co. v. Carmody, 72 Mo. App. 534; Stetina v. Bergstein, 231 S. W. 1059; Wright v. Railroad, 118 Mo. App. 392, 94 S. W. 555; Afflick v. Streeter, 136 Mo. App. 712, 119 S. W. 28; Drumm-Flato Com. Co. v. Bank, 107 Mo. App. 426, 81 S. W. 503.]

In Eberson v. Invest. Co., 130 Mo. App. 296, l. c. 308, 109 S. W. 62, this court said:

"If a witness has a recollection which is either revived or refreshed by reading a memorandum or document, it is immaterial who made the document, or whether it was made under the supervision, or even in the presence of the witness. The essential fact is that after looking at it, the witness has a present memory of the facts. [1 Wigmore, sec. 758, et seq.; Hill v. State, 17 Wis. 675.] And perhaps this is true, too, when the witness has no present recollection, but knows he once verified the document to be used as a memorandum and found it accurate."

Especially is that true in applying this to the market value sought to be given by the defendant as a witness.

In 3 Chamberlayne on the Modern Law of Evidence, the following appears on pages 2786-87:

"Market value is a fact. The witness may derive his knowledge as to it from the information furnished by others. It may even be learned from an examination of stock or market reports, price lists, trade circulars, sales of similar property and the like. In short, a witness may testify to the value of property if his knowledge of it has been derived through the general avenues of information to which the ordinary business man resorts, to inform himself as to values for the proper conduct of his affairs."

Likewise, the same rule is succinctly stated in 1 Greenleaf on Evidence (15 Ed.), p. 572. Therefore, it certainly was error to refuse to allow this witness to refresh his memory from such books.

The other reason for denying the lien was that the account set forth two items of labor, one for 149¾ hours of labor at $1.25 an hour, and the other for 124 hours of labor at $1.25 an hour. No question arises about the proper dates. The referee held that these items were not lienable because they did not state or classify the kind of labor, and relied upon the case of Feeny v. Rothbaum, 155 Mo. App. 331, 137 S. W. 82. The other items in the account for materials furnished are clearly separable from the labor item. Though the labor is not further characterized in the account, the testimony shows that the work consisted of scraping off wall paper, painting and tinting and paper hanging. It was paper hangers' work.

It is the law that the lien account must be considered as a whole. [Architectural Iron & Fdy. Co. v. Const. Co., 200 Mo. App. 33, 205 S. W. 278.] That case is direct authority for holding that if the lien paper as a whole fairly advises the owner and the public of the nature of the work and discloses that such demand is one within the lien law, it is sufficient.

In an exhaustive opinion from this court in Lumber Co. v. Robson, 182 Mo. App. 611, 168 S. W. 244 (as sustained on certiorari in State ex rel. v. Reynolds, 266 Mo. 595, 182 S. W. 743), this rule is firmly established. [See, also, Walden v. Robertson, 120 Mo. 38, 25 S. W. 349.]

The case of Feeny v. Rothbaum, supra, relied upon, was decided in 1911, and since then our courts have taken a more liberal view in these cases. However, even that case is distinguishable. There, it was said that if the work referred to but "one thing," the decision would be different. The whole account here shows that the materials and work was for paper hanging, or work in that connection, that is, preparing the walls for such, etc. The lien paper, doubtless, could have been more definitely stated, yet it is sufficient, we think, to pass muster.

As to the Emil Bopp claim. He first claims $1264.40 for work done under a verbal contract with Theodore Bopp, Sr., who held a contract with the Stix, Baer & Fuller Dry Goods Company, the general contractor. Again, the contractor's books were excluded. This defendant testified that whenever he delivered any material to the job, he would put same down in the book; that the painters would return their time card on Friday evening, and from that he would put down the names and hours of labor for the workmen in his book. He further testified that he would go to this job "sometimes a couple times a day, and sometimes only once a day;" that in his business it would sometimes become necessary to delay going to the job for a day or two. But the testimony is that the material account was entered in the book "as I delivered them to the work."

As to the items of labor, the referee refused to admit the books, and we think this was error. The labor account states:

"119 hours @ 90 cents ........................ $ 107.10
930 hours @ $1.25 ........................... 1,043.75
32½ hours @ $1.25 ......................... 40.65
18½ hours @ $1.25 ......................... 23.15
                                         _____
A total of ............................. $1,214.65"

Here, again, the lien paper as a whole shows not only fairly but almost conclusively that the labor items refer to but one thing, and that is paper hangers' and painters' time. And, as said in McCray Lbr. Co. v. Const. Co., 285 S. W. 104: "We think that a man of ordinary intelligence would understand this statement," though it must be conceded that the account is by no means in model form.

What we have said above as to those claims will clarify a retrial of the claim of Walter T. Bopp, also. This, however, should be noted: In the cross-examination of this defendant, the following questions and answers appear:

"Q. Can you tell the reasonable market value of every item in this account without looking at any book or memorandum of any kind? A. That's just what I was going to say; market prices raise and lower all the time.

"Q. They fluctuate back and forth? A. Yes, sir.

"Q. You don't know the price in any particular day? A. No sir; and that's the reason I had it entered in the book."

The referee declined to allow the witness to refresh his memory from same, and we think this worked reversible error. Herbert Bopp was bookkeeper for Walter T. Bopp, and he testified as to the entries in the book in his own handwriting; that he made same in the ledger in the regular way in which same was kept by Walter T. Bopp in his business, and that the accounts were made in the same way that all other entries were made in this book, that is, from material and time slips received from the men as the work progressed and as the materials were actually used on the job. Both Walter T. Bopp and Herbert Bopp testified positively that they were present and working on this job, and that they both knew that these materials as set out in the book were used in the residence and that the labor was actually done on same. We are of the opinion that this ledger was admissible, and most certainly that such may be used to refresh the memory of the witness who has personal knowledge of the facts. It requires no argument to show that rarely, if ever, could a contractor tell from memory what every item entering into the construction of a building cost, unless he used a price book or other memoranda to refresh his recollection, or unless he was permitted to introduce his permanent books to show this.

While the judgment must be reversed, we cannot from the present record enter a proper judgment here. [See Lumber Co. v. Robson, supra.] We therefore must remand the cause for a new trial, to be proceeded with under our views as above expressed. Accordingly, the judgment is reversed and the cause remanded. *Becker* and *Nipper, JJ.,* concur.