HENGES COMPANY, Inc., a Corporation,
Plaintiff,

v.

DOCTORS' NORTH–ROADS BUILDING,
INC., a Corporation et al., De-
fendants-Respondents.

Eric W. SMITH, Jr., and Robert Entzeroth,
a Partnership, doing business as Smith &
Entzeroth, Defendants-Cross Claimants-Ap-
pellants,

v.

ST. LOUIS COUNTY NATIONAL BANK and
Dalton W. Schreiber, Trustee,
Defendants-Respondents.

No. 32390.

St. Louis Court of Appeals.

Missouri.

Nov. 15, 1966.

Motion for Rehearing and for Transfer to
Supreme Court Denied
Dec. 12, 1966.

Tremayne, Joaquin, Lay & Carr, Clayton, for defendants-cross claimants-appellants.

Dubail, Judge & Kilker, St. Louis, for defendant-respondent Doctors' North-Roads Bldg., Inc.

Rader & Love, Clayton, for defendants-respondents St. Louis County Nat. Bank and another.

TOWNSEND, Commissioner.

This equity proceeding was instituted by Henges Company, Inc. in accordance with the terms of Section 429.270 V.A.M.S. for the purpose of marshalling mechanics' liens and other encumbrances on an office building owned by defendant Doctors' North-Roads Building, Inc. Joined as parties defendant, in addition to the owner, were four mechanics' lien claimants who had filed their respective statutory notices of lien and two mortgagees. After the equity suit was started one of the mortgagees, St. Louis County National Bank, hereinafter referred to simply as "Bank", foreclosed its mortgage and at the trustee's sale purchased the property in question. Among the mechanics' lien claimants joined as defendants were the partners, Smith and Entzeroth, architects, who in due course filed their answer and a cross-bill. Subsequently the plaintiff and all mechanics' lien claimants who were joined as defendants, other than Smith and Entzeroth, settled their claims with the Bank and so pass from the scene. The record is devoid of any evidence as to the purchase price of the building at the foreclosure sale.

At the trial on the cross-bill the court held that the mechanic's lien statute was not intended by the Legislature to confer mechanic's lien rights upon one furnishing the services of an architect. The court's decree adjudged that the owner was indebted to the appellants in the sum of $18,-087.69 and gave no other relief The architects appeal from the denial of their lien claim.

On April 1, 1958, the architects, appellants herein, entered into a contract "with Doctors' North-Roads Building, Incorporated" for the performance of their professional services, using the standard form of the American Institute of Architects. The services to be performed consisted of "the necessary conferences, the preparation of preliminary studies, working drawings, specifications, large scale and full size detail drawings, for architectural, structural, plumbing, heating, electrical, and other mechanical work; assistance in the drafting of forms of proposals and contracts; the issuance of certificates of payment; the keeping of accounts, the general administration of the business and supervision of the Work." For these services the owner agreed to pay the architects a fee of six per cent of the "cost of the Work, * * * the said percentage being hereinafter called the Basic Rate".

Prior to the execution of the contract of April 1, 1958 the architects had prepared for the promoters of the corporation schematic designs for feasibility studies. After execution of the contract the architects refined the schematic drawings and prepared other preliminary drawings which were put in booklet form; they prepared detailed cost estimates for the construction of the building; working drawings and specifications for the job followed. The specifications encompassed sixty-three pages for construction of the building and thirteen pages for the elevators. In addition ninety-two pages were devoted to plumbing, heating, ventilating, air conditioning and electrical specifications. Following the completion of the working drawings and specifications the architects furnished the same to prospective bidders and on December 7, 1958, received the bids of various general contractors and sub-contractors.

The construction contract between the owner and the general overall contracting company was executed on December 15, 1958.

The owner's note for $500,000, payable to Bank, and the deed of trust securing the same were executed on December 30, 1958. On the same date an escrow and disbursing agreement was signed by the owner, the general contractor, the Bank and the Guaranty Land Title Company, escrowee, by the terms of which the approval of the architects was required on all bills prior to payment therefor being made out of the escrow fund.

The only Missouri case cited by the parties which involved the question of the lienability of architect's services is Raeder v. Bensberg, 6 Mo.App. 445, decided in 1879; research has disclosed no other. That case held that an architect was not entitled to a mechanic's lien on two grounds, first, that by application of the doctrine of ejusdem generis an architect was not included within the statutory description of "every mechanic or other person who shall do or perform any work or labor" and, second,

that an architect performed no work or labor "upon" a building. We agree with appellants that, in the light of subsequently decided cases, the first ground of decision stated in the Raeder case can no longer stand; such cases have clearly shown that the general term, "other person", is not limited to the class specifically designated, "mechanic", or other persons like mechanics.

Appellants would find in cases cited to us parallels to the instant case in that in the cited cases the relative court allowed as part of the lien amount some items which appellants denominate supervision or superintendence or planning and engineering. We proceed to consider such cases.

In Fagan v. Brock Motor Car Co., Mo. App., 282 S.W. 135, the lien claimant contracted to install a heating system, for which he was to be paid the exact cost to him of the equipment plus twenty per cent, the overall cost not to exceed a named figure. It was held that the twenty per cent was includable in the amount of the claimant's lien. In Tual v. Martin, 228 Mo.App. 30, 66 S.W.2d 969, the agreed contract price for the erection of a building was stated in terms of the cost of the materials to the contractor plus $1.00 per hour for the contractor's own labor as a carpenter plus ten per cent; it was held that the lien covered the sum total of the recited elements. It is to be noted that in each of these cases the contract was fully performed by the contractor, that in each case the claimant furnished the materials which went into the structure and that the lien amount was held to be properly computed at the precise contract amount.

In contrast to the last two cases, the claim of lien in Fuhler v. Gohman & Levine Construction Co., 346 Mo. 588, 142 S.W.2d 482, and in Leach v. Bopp, 223 Mo.App. 254, 12 S.W.2d 512, was based not on a contracted price but upon quantum meruit —the reasonable value of work and labor. In the Fuhler case, the claim of lien set out various items of services which the claim-

ant furnished through sub-contractors or employees and stated a certain value for each; to the sum total of such values the claimant added ten per cent for overhead and ten per cent for profit "over actual cost". The ten per cent additions were held properly included in the total amount of lien claim. The same situation existed in the Leach case. In each of these cases the claimant was responsible for the furnishing of labor to the structure through sub-contractors or employees, did furnish labor for the structure in this manner and in the course of doing so devoted his own personal attention to the superintendence of the sub-contractors and employees in the course of their performing their jobs, thereby contributing his own efforts in the course of construction. Since, in the four cases cited, the relative court approved the added percentages, and in doing so, sometimes approved the term, "overhead", and sometimes "superintendence" and sometimes "profit", the appellants would find authority for their proposition that the trial court erred in concluding that Chapter 429 of the statutes "is not intended by the legislature to include the services of an architect". We find no parallelism between the cited cases and the present one; the cases are so different factually that they cannot be said to be made comparable by the fact that the claims allowed included some compensation for superintendence. In the instant case the architects furnished no materials; they were under no contractual duty to furnish any and in connection therewith to supervise their installation. Neither did they furnish the labor of others upon the building; they were under no obligation to furnish such labor of others and to oversee the proper performance of duty by such others. The cited cases cannot be regarded as relevant to our present problem, for in each of them the claimant satisfied the statutory requirement of performing "any work or labor upon, or furnish any material * * * for any building, erection or improvements upon land * * *"; in them the superintendence factor is pertinent only to the problem of determining the contract price or the reasonable value of the labor or materials so furnished.

The argument of counsel intermingles the preparation of plans and specifications with the architect's supervision of construction as the building goes up as if this combination constituted one unitary whole, thereby giving a lien for the full contract fee. Such comprehensive concept would thereby give a lump sum lien over-all for work done in connection with construction and for work done long before construction started. It is our opinion that proper analysis requires the separate consideration of these elements. Cf. Edgar v. Salisbury, 17 Mo. 271. Consideration is given first to the question of the lienability of fees for plans and specifications. It is contended that the statutory term "other person" includes anyone who contributes to the form, shape and structure of the overall project, that the architect's services are directly related—and necessary—to the progress of the subsequent erection of the building and that the true test of lienability is whether or not the services are a direct and integral part of the overall construction plan for the building. The difficulty with this position is that the statute, neither directly, nor by implication, speaks in such terms.[1] The statute does not give a lien for the exercise of professional thinking, no matter how meritorious; it does not reward with a priority digital or graphic competence or even mathematical genius. It deals with specifics; it enumerates the bases upon

1. Appellants' conclusion as to the "true test of lienability" is attempted to be derived from cases where the lien claimant had an actual physical connection with the land in question, a factor completely lacking in the architect's preparation of plans and specifications. Arthur Morgan Trucking Co. v. Shartzer, 237 Mo.App. 535, 174 S.W.2d 226; Ladue Contracting Company v. Land Development Co., Mo.App., 337 S.W.2d 578; Vasquez v. Village Center, Inc., Mo., 362 S.W.2d 588.

which a lien may be established. The preparation of plans and specifications, no matter how laborious or brilliant, does not fall within either of the categorical bases statutorily prescribed.

■ For generations it has been the rule in the courts of Missouri that the mechanic's lien statute is to be liberally construed in order to effectuate the beneficent purposes for which the statute was adopted. Expression of this rule of construction will be found in Raeder v. Bensberg, supra. The reported cases give convincing evidence that, in subsequent proceedings, the appellate courts have fully honored the precept of liberal construction. And yet situations do arise where even the utmost liberality of attitude could not lead one to the conclusion that the requirements of the statute had been satisfied, e. g., see Tallman Co. v. Villmer, Mo.App., 133 S. W.2d 1085; McGuinn v. Federated Mines & Milling Co., 160 Mo.App. 28, 141 S.W. 467; Putnam v. Heathman, Mo.App., 367 S.W.2d 823. Those cases which have been most generous in awarding the lien involved what would seem to be the irreducible minimum to bring a claim within the scope of the statute, namely, that the services (labor) rendered had a physical connection with the land. Nothing of that nature is found in the claim for fees for the preparation of plans and specifications. In any event, if the words of the statute— "perform any work or labor upon * * * any building"—are to be accorded any respect, we suggest the possibility that the limits of liberal construction may have been reached in Arthur Morgan Trucking Co. v. Shartzer, supra, and Ladue Contracting Co. v. Land Development Co., supra.

■ Appellants maintain that, even if no lien is allowable for their services in drawing plans and specifications, a lien does lie for supervision of construction. This contention necessitates consideration of the contract of the architects with the owner. That document provides that the owner will pay the architects "a fee of six per cent of the cost of the Work". The services to be performed by the architects have been previously enumerated. The detailed provisions for payment of architect's fee follow:

"PAYMENTS.—Payments to the Architect on account of his fee shall be made as follows, subject to the provisions of Article 4:

Upon completion of the preliminary studies, a sum equal to 25% of the basic rate computed upon a reasonable estimated cost.

During the period of preparation of specifications and general working drawings monthly payments aggregating at the completion thereof a sum sufficient to increase payments to 75% of the rate or rates of commission arising from this agreement, computed upon a reasonable cost estimated on such completed specifications and drawings, or if bids have been received, then computed upon the lowest bona fide bid or bids.

From time to time during the execution of the work and in proportion to the amount of service rendered by the Architect, payments shall be made until the aggregate of all payments made on account of the fee under this Article, but not including any covered by the provisions of Article 4, shall be the sum equal to the rate or rates of commission arising from this agreement, computed upon the final cost of the Work".

The appellants construe these provisions to mean that 25% of their total fee (or 1½% of the cost of the work) was for supervision of construction. This presents immediately a problem of contract construction. The basic promise of the owner is to pay "the Architect for such [enumerated] services a fee of six per cent." This basic promise is not broken down into a commitment to pay a certain per cent of cost for plans and a certain other per cent for supervision. In other words the promise is unitary in character—a certain over-

all single total amount in exchange for all the services to be performed by the architect. When we inspect the clauses headed "payments", we find that these provisions relate to times of payment of parts of the fee, without any specific allocation of any part of the fee to any part of the services. However appellants' evidence shows that the statements which they rendered to the owner were prepared on the basis of allocating 75% of their fee to plans and specifications and 25% to supervision. Thus on December 5, 1958, appellants' statement billed the owner for $22,812.75 as "Amount of fee due for preliminary architectural services, and for preparation of working drawings and specifications" and acknowledged prior payments thereon of $7,350. This billing carried the explanatory comment that the fee so billed was 4½% of $506,950 (the original bid of the contractor) and stated further that "The final fee of 6% of the cost of the work will take into account all change orders affecting the total cost." On January 19, 1959, appellants billed the owner for "4½% of $485,200 (the revised contracted cost of construction) $21,834.00" for preliminary services and preparation of working drawings and specifications and added $265.95 as "Amount of fee due for supervision to date—1½% of Estimate #1: $17,730". Deducting payments previously made the statement shows a balance owing of $4287.20.

Thereafter successive billings of April 17, 1959, May 4, 1959, June 2, 1959, July 13, 1959 and August 11, 1959 carried the separate item of "Amount due for supervision to date" and each such billing carried forward the above stated $4287.20 as "Balance due for working drawings and specifications".

Beginning with appellants' statement of September 11, 1959, a charge for accrued interest on unpaid balances is found in each statement thereafter rendered in October, November and December, 1959, and in January, February, April, June, October, November, 1960. The added interest charge had been agreed to in a conference between the promoters and appellant Smith, probably in September 1959. Separate charges for supervision were made in the monthly billings through February 1960. Thereafter appellants' statements billed the "Amount due for architectural services and interest to" a stated date without separation for supervision.[2]

It was stipulated by the parties that no objections to any of the statements were made on behalf of the owner. And during the course of appellant Smith's testimony counsel put to him the question: "Mr. Smith, did any of the Weitzmans [promoters] or anybody else connected with Doctors' North-Roads Building, Inc. complain to you about your bills?" to which the witness answered: "No, sir". Appellants' brief states that "Smith & Entzeroth construed this contract to mean that the balance of the fee, one and one-half percent (1½%) was for supervision and the bills were prepared accordingly. There was no evidence that the Owner placed any different meaning on the contract or that it objected in any manner to the billing. Thus a fee of one and one-half percent (1½%) of the cost of the work, or Eight Thousand Dollars Fifty-Two Cents ($8000.52), was due for supervision." This argument plainly addresses itself to any question which may be raised regarding the divisibility of the architects' contract and amounts to a contention that if there be any doubt as to severability the parties themselves have given a

2. The architects' contractual duty of supervision was stated in these words:
     "7. Supervision of the Work.—The Architect will endeavor by general supervision to guard the Owner against defects and deficiencies in the work of contractors, but he does not guarantee the performance of their contracts.

The general supervision of the Architect is to be distinguished from the continuous on-site inspection of a clerk-of-the-works."
There was no evidence relating to the appointment or functioning of a clerk-of-the-works.

practical construction to that part relating to payments. Assuming for the moment that the architects' contract was so made severable, that assumption naturally suggests the question of whether or not the performance of an original contract for architectural supervision alone of a general contractor's construction, unrelated to the preparation of plans and specifications, would by itself give the architect a right to a mechanic's lien. We do not purport to pass upon that question here; suffice it to say that the supervision so envisaged does not equate to the supervision which was found in the appellants' cited cases of Fagan v. Brock Motor Car Co., Tual v. Martin, Leach v. Bopp and Fuhler v. Gohman & Levine Construction Co., supra.

█ We do not find that appellants have sustained the burden of showing the divisibility of their contract. First, the contract calls for a flat fee of six per cent, without attempting to apportion that fee among the different kinds of services to be rendered. In this respect such a contract is sometimes labelled entire. Then, the payment clauses of the contract call for monthly payments in unspecified amounts during the preparation of plans and specifications but here again there is no allocation of any part of the overall fee to a specific part of the services rendered. The requirement that by the time of completion of plans and specifications seventy-five per cent of the fee be paid appears to be only a time-of-payment clause without any implication that overall payment of that amount and the preparation of plans and specifications were agreed exchanges of performance. We cannot even deduce from mere time-of-payment clauses an implication that the parties placed upon supervisory services a value equal to one-third the value of the work in preparing plans and specifications. The practice of billing separately for supervision involved acts which were unilateral in character and we do not believe that any rule of practical construction by the parties is here applicable in view of the fact that the owner made no payments to the architects after the latter began the practice of so billing separately for supervision.

█ What results is a contract in which no specific amount or percentage of a promised total fee is designated as compensation for appellants' services in supervision. Under these circumstances there is no contractual basis for the imposition of a lien for supervision alone.

█ On this trial de novo it is within the province of this Court to make its own findings of fact. However we find no reason to disturb the findings made by the trial court although one of its findings, objected to by appellants, was immaterial. We refer to the trial court's finding (20) that appellants did not rely on the mechanic's lien statute.

█ The trial court's denial of a lien to appellants is approved. However we do not believe that the court's conclusion of law that "Chapter 429 of the Missouri Revised Statutes relating to mechanic's and materialmen and conferring mechanic's lien rights upon such individuals is not intended by the legislature to include the services of an architect" should stand. The services of an architect may be many and varied. The consideration above given to the question of the divisibility of the architects' contract in this case suggested that some types of architectural services might be found to satisfy the requirements of the lien statute and therefore it was intended to leave open the question of their lienability in particular cases. Left open is the question of whether or not a severable part of an architect's contract in which a stated fee is promised to be paid as the agreed exchange for the architect's supervisory services alone can bring the performance of such services within the purview of the mechanic's lien statute. Necessarily left open is the same question where a contract provides only for an architect's supervision of construction, unconnected with the furnishing of any other work or materials.

The holding that here there was no lien for supervision renders it unnecessary to consider appellants' argument as to priorities among encumbrances. As to such an issue the pertinent statute would be Section 429.060 which would require clear evidence as to the time of "the commencement of such buildings or improvements." In this connection Potwin State Bank v. J. B. Houston & Son Lumber Company (Ward) 183 Kan. 475, 327 P.2d 1091, and the annotation at 80 A.L.R.2d 179 will be found enlightening.

Judgment in favor of appellants against Doctors' North-Roads Building, Inc. in the amount of $18,087.69 and costs should be affirmed.

PER CURIAM.

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, judgment in favor of appellants against Doctors' North-Roads Building, Inc. in the amount of $18,087.69 and costs is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.